Irvin H. GNAGY

v.

The UNITED STATES.

No. 516–78.

United States Court of Claims.

Oct. 22, 1980.

Howard J. De Nike, San Francisco, Cal., attorney of record, for plaintiff. De Nike & Hickman, San Francisco, Cal., of counsel.

Ransey G. Cole, Jr., Washington, D. C., with whom was Asst. Atty. Gen. Alice Daniel, Washington, D. C., for defendant.

Before FRIEDMAN, Chief Judge, and KUNZIG and SMITH, Judges.

ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

SMITH, Judge:

This case involving two claims for back pay is before the court on the parties'

cross–motions for summary judgment.[1] The motions, on which we have heard oral argument, present a single dispositive issue: Is a military member of the National Guard a federal "employee" for purposes of the Back Pay Act[2] when his National Guard unit is not in active federal service and when he is discharged from the National Guard pursuant to a recommendation of nonretention made by a federally mandated enlisted qualitative retention board of the National Guard? Because we hold that such a person is a state employee, rather than a federal employee, we grant defendant's motion for summary judgment.

## I.

In June 1974, plaintiff was a first sergeant in the California Army National Guard (California Guard).[3] He was also employed as a civilian technician for the National Guard. In June 1974, an enlisted qualitative retention board of the California Guard recommended that plaintiff not be retained in the California Guard.[4] Pursuant to the approval by the commanding general of the California Guard of this recommendation, plaintiff was separated from the California Guard by means of an honorable discharge effective October 15, 1974. On November 15, 1974, plaintiff's employment as a civilian technician for the National Guard was terminated because membership in the National Guard was a prerequisite to this employment.[5]

On November 27, 1978, plaintiff filed a petition in this court. In his petition, he alleges that his nonselection for retention in the California Guard was "predicated upon a derrogatory [sic] Enlisted Efficiency Report (EER) prepared on 7 December 1973 by plaintiff's former company commander covering plaintiff's performance from December 1972 to December 1973."[6] According to plaintiff, the "preparation and processing of the * * * EER failed to

---

1. Plaintiff's motion requests judgment on liability only, with the amount of damages to be determined in further proceedings.

2. 5 U.S.C. § 5596 (1976).

3. As of that month, he had accrued more than 20 qualifying years of service for military retirement. The military pay grade correspondent to the rank of first sergeant was E–8.

4. Army Regulation (AR) 135–205 (Apr. 6, 1973) requires each state Army National Guard to have an "enlisted qualitative retention program." The program is to provide "for an annual review of the records of enlisted men in the pay grades of E–7 through E–9 having 20 qualifying years of service for retirement to determine retention potential." AR 135–205 ¶ 4–2. Paragraph 4–5c of AR 135–205 directs state adjutants general to "implement the Enlisted Qualitative Retention Program within their area of jurisdiction."

    AR 135–205 prescribes "the procedures for implementation and conduct of the Enlisted Qualitative Retention Program." AR 135–205 ¶ 4–6. Paragraph 4–7 of AR 135–205 states: "Qualitative retention boards will be convened annually * * * by State adjutants general, * * * to consider and make recommendations for retention of Army National Guard * * * enlisted members beyond 20–years service." Paragraph 4–9a of AR 135–205 states: "State adjutants general * * * will * * * (3) [s]elect and appoint board members * * * [and] (6) [a]pprove or disapprove the board action."

5. Section 709(b) of 32 U.S.C. (1976) provides:

    "*Except as prescribed by the Secretary concerned, a technician* [for the National Guard] * * * *shall, while so employed, be a member of the National Guard and hold the military grade specified by the Secretary concerned for that position.*"

    Section 709(e) of the same title provides in part:

    "Notwithstanding any other provision of law and under regulations prescribed by the Secretary concerned–

    "(1) a technician who is employed in a position in which National Guard membership is required as a condition of employment and who is separated from the National Guard or ceases to hold the military grade specified for his position by the Secretary concerned shall be promptly separated from his technician employment by the adjutant general of the jurisdiction concerned."

6. AR 135–205 requires "annual preparation of an EER on Army National Guard * * * enlisted members, in the pay grades E–6 through E–9." AR 135–205 ¶ 2–1. Paragraph 2–2 of AR 135–205 states: "The EER is designed to–*a.* [p]rovide job performance evaluation and personnel data * * * [;] *b.* [s]erve as a tool for obtaining information essential to State adjutants general * * *." AR 135–205 prescribes procedures for the preparation and processing of the EER's.

meet [certain] requirements of" AR 135–205. Plaintiff alleges also that, in addition to being influenced by the allegedly defective EER, the retention board "which non–selected [him] for retention violated AR 135–205 * * * in failing to consider plaintiff's annual MOS evaluation."

In his petition, plaintiff asks for "an award of back pay and any other monies and benefits due plaintiff as a result of his wrongful involuntary separation from the California Army National Guard, to include back pay from lost employment as a National Guard Technician." Plaintiff also requests the court to issue "an order directing defendant to restore plaintiff to the grade and rank in the Army National Guard which plaintiff would hold, but for the aforesaid involuntary separation."

## II.

We consider first plaintiff's claim for California Guard membership back pay, i. e., his claim for back pay exclusive of "back pay from lost employment as a National Guard Technician." Plaintiff appears to found the claim in question on the Back Pay Act, 5 U.S.C. § 5596 (1976).[7] Section 5596 provides in pertinent part:

(a) For the purpose of this section, "agency" means–

(1) an Executive agency;

* * * * * *

(b) An employee of an agency who * * * is found by appropriate authority * * * to have undergone an unjustified or unwarranted personnel action that has resulted in the withdrawal or reduction of all or a part of the pay, allowances, or differentials of the employee–

(1) is entitled, on correction of the personnel action, to receive for the period for which the personnel action was

in effect an amount equal to all or any part of the pay, allowances, or differentials, as applicable, that the employee normally would have earned during that period if the personnel action had not occurred, less any amounts earned by him through other employment during that period; * * *

Thus, with respect to the claim for California Guard membership back pay, plaintiff is eligible to recover under section 5596 only if his membership in the California Guard qualified him as an "employee" of a federal "Executive agency."

Plaintiff argues: "Inasmuch as the plaintiff was separated [from the California Guard] under a program designed and implemented by the United States [the enlisted qualitative retention program], he stands, in challenging such termination, in the position of employee of the United States." Plaintiff elaborates this argument as follows:

* * * [T]he federal direction and control of State officials in preparing EER's and holding Qualitative Retention Boards [the direction and control being exercised through AR 135–205], is sufficient to find the necessary employment relationship between the parties to hold the defendant liable for the loss to plaintiff of his enlistment in the National Guard * * *.

As support for this argument, plaintiff cites Chaudoin.[8]

Chaudoin, however, cannot be read to support the argument. The plaintiff there had been dismissed in 1971 from his position as a civilian technician for the Delaware National Guard. He sought reinstatement to the position, back pay, and punitive damages. The United States Court of Appeals for the Third Circuit held that there was

---

7. In addition to relying on section 5596, plaintiff states in his petition that the claim "arises under" the due process clause of the fifth amendment and that the claim is "based upon" certain paragraphs in AR 135–205. Nothing in the due process clause of the fifth amendment or in the AR paragraphs cited by plaintiff mandates the payment of money to a person suffer-

ing their violation. See Eastport S.S. Corp. v. United States, 178 Ct.Cl. 599, 372 F.2d 1002 (1967); Muehlen v. United States, 209 Ct.Cl. 690 (1976).

8. Chaudoin v. Atkinson, 494 F.2d 1323 (3d Cir. 1974.)

jurisdiction under 28 U.S.C. § 1361 (1976) to order his reinstatement. To reach this holding, the court was required to determine whether or not the adjutant general of Delaware, who had dismissed the plaintiff, was "an officer or employee of the United States or any agency thereof."[9] The court concluded that, in employing and administering civilian technicians for the Delaware National Guard, the adjutant general acted as "an agency or an agent of the United States."[10] The court based its conclusion on two factors. First, 32 U.S.C. § 709(d) (1976) provided: "A technician [for the National Guard] is * * * an employee of the United States." Second, section 709(c) of the same title provided: "The Secretary [of the Army or of the Air Force] concerned shall designate the adjutants general * * * to employ and administer the technicians authorized by this section."

■ The *Chaudoin* court was not required to consider and, in fact, did not consider the issue whether a former military member of the National Guard is to be considered a federal employee for purposes of seeking redress under the Back Pay Act for his allegedly wrongful dismissal from the National Guard, his dismissal having been effected under the enlisted qualitative retention program mandated by AR 135–205. The plaintiff in *Chaudoin*, in his capacity as a civilian technician for the Delaware National Guard, was made a federal employee by statute (32 U.S.C. § 709(d)). There is no statute conferring federal employee status as an incident of membership in a National Guard unit not in active federal service. Hence, the facts underlying *Chaudoin* are different from the facts here and the holding in *Chaudoin* is unrelated to the issue here.[11]

We are unable to find authority supportive of plaintiff's contention that, for purposes of his claim for California Guard membership back pay, he should be considered a federal employee. There is, however, authority indicating that he should *not* be considered a federal employee. The centerpiece of this authority is *Maryland v. United States*.[12]

In that case, the Supreme Court held that, for purposes of the Federal Tort Claims Act,[13] a member of a National Guard unit not in active federal service, who was also employed as a civilian "caretaker" for the National Guard,[14] was not a

9. The plaintiff was seeking an order directing the adjutant general to restore him to the civilian technician position. Section 1361 provided:

"* * * *  *Action to compel an officer of the United States to perform his duty*

"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

10. *Chaudoin v. Atkinson, supra* note 8, 494 F.2d at 1329.

11. Plaintiff argues additionally, on the basis of *Chaudoin*, that "in implementing the terms and provisions of the [Enlisted] Qualitative Retention Program, * * * the State Adjutant General and his subordinates, are agents of the United States." More specifically, plaintiff argues that his separation from the California Guard was "unlawfully effectuated by the State Adjutant General acting as an agent of the United States, pursuant to the federal mandate of Army Regulation (AR) 135–205, * * * *."

We are not required to decide the issue raised by this argument. Even assuming that the commanding general of the California Guard and his subordinates act as federal agents in their implementation of the enlisted qualitative retention program, plaintiff was never *their* employee. Rather, he was an "employee" of the California Guard. His discharge was from it, not from employment with them. Hence, the status of the commanding general and his subordinates relative to the enlisted qualitative retention program does not impact on the issue whether plaintiff's former membership in the California Guard qualifies plaintiff as a federal employee for purposes of the Back Pay Act.

Even though we do not decide the agency issue raised by plaintiff, we note that the commanding general of the California Guard possesses power to reject recommendations made by enlisted qualitative retention boards. This power might be antithetical to the agency theory advanced by plaintiff.

12. *Maryland v. United States*, 381 U.S. 41, 85 S.Ct. 1293, 14 L.Ed.2d 205 (1965).

13. 28 U.S.C. § 1346 (1976); 28 U.S.C. § 2671 (1958), *as amended*, 28 U.S.C. § 2671 (1976).

14. A "caretaker" for the National Guard is now called a "technician." The change in nomen-

federal employee in either his military or civilian capacity. Rather, according to the Court, he was a state employee in both capacities. In reaching its holding that, when the National Guard was not in active federal service, membership in the Guard did not constitute federal employment, the Court appears to have relied primarily on the fact that "[t]he National Guard is the modern Militia reserved to the States by Art. I, § 8, cl. 15, 16, of the Constitution. [Footnote omitted.]" [15]

Plaintiff asserts that the issue whether membership in a National Guard unit not in active federal service constitutes federal employment was not "argued before" the Supreme Court in *Maryland v. United States*. Plaintiff's assertion is literally correct. However, the issue was not argued because the plaintiffs in that case had conceded that a person who was both a member of a National Guard unit not in active federal service and a civilian caretaker employee of the National Guard, was not a federal employee when he was acting in his military capacity. This concession was noted by the Supreme Court when it stated:

> It is not argued here that military members of the Guard are federal employees, even though they are paid with federal funds and must conform to strict federal requirements in order to satisfy training and promotion standards. Their appointment by state authorities and the immediate control exercised over them by the States make it apparent that military members of the Guard are employees of the States, and so the courts of appeals have uniformly held. * * * [16]

Although the issue was not argued before the Supreme Court, the Court adverted to the issue and specifically held that membership in a National Guard unit not in active federal service did not constitute federal employment.

Plaintiff argues that this holding was eroded by the enactment of the National Guard Technicians Act of 1968 (the act). There is no merit to this argument. The act granted federal employee status only to civilian technicians employed by the National Guard. The act did not alter the state employee status of military members of the Guard. That this was so was made clear in the legislative history of the act. The House report accompanying the bill which became the act stated in pertinent part:

> The bill provides that the Secretaries [of the Army and the Air Force] concerned under the regulation will designate the adjutants general of the various States to employ and administer the technicians. * * *

> This requirement is intended to achieve two purposes: (a) recognize the State character of the Guard and (b) meet the requirement of giving the adjutants general (who are State officers) the statutory function of employing Federal employees.[17]

The holding in *Maryland v. United States* regarding the employment relationship arising from membership in a National Guard unit not in active federal service rests, in part, on article I, section 8, clause 16 of the United States Constitution. Clause 16 reads:

> [The Congress shall have Power * * ]

> To provide for organizing, arming, and disciplining, the Militia, and for governing such *Part* of them *as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and the Authority of training the Militia* according to the discipline prescribed by Congress [.] [Emphasis supplied.]

In its enactments concerning the National Guard, Congress has been careful not to impinge on this reservation of power to the

---

clature was effected by the National Guard Technicians Act of 1968, 32 U.S.C. § 709 (1976).

**15.** *Maryland v. United States, supra* note 12, 381 U.S. at 46, 85 S.Ct. at 1297.

**16.** *Id.* at 48, 85 S.Ct. at 1298.

**17.** H.R.Rep.No. 1823, 90th Cong., 2d Sess., *reprinted in* [1968] U.S.Code Cong. & Ad.News, pp. 3318, 3330.

states. Section 3079 of 10 U.S.C. (1976) provides: "When not on active duty, members of the Army National Guard of the United States [which is a reserve component of the United States Army] shall be administered, armed, equipped, and trained in their status as members of the Army National Guard." Section 101(10) of the same title states:

* * * "Army National Guard" means that part of the organized militia of the several States * * * that—

* * * * * *

(B) is trained, and has its officers appointed, under the sixteenth clause of section 8, article I, of the Constitution[.]

Thus, federal statutory law expressly recognizes the state militia character of National Guard units not in active federal service.

As for the enlisted qualitative retention program mandated by AR 135–205,

[w]e have here a classic situation * . * in which the Congress has undertaken the financial support of a state activity [namely, the maintenance of a militia] * * * on condition that the activity conform to the congressional enactments and the regulations promulgated thereunder. The Congress, consistent with the limited power vested in it by Article I, § 8 of the Constitution * * * has undertaken to subsidize the National Guard units of the respective states, on condition that they be organized, maintained, disciplined and equipped in accordance with federally prescribed standards.

It is evident that the only purposes of the pertinent [federal] statutes [concerning the National Guard], and the regulations promulgated thereunder, were to insure the effective organization of the

National Guard and to protect federal funds against unrestricted expenditure, both in the national interest. There is nothing in the legislation which would indicate that it was the intent of Congress to * * * interfere with the right of the states to organize the Guard * * * .[18]

■ In conclusion, we hold that a member of a National Guard unit not in active federal service is not, insofar as his military capacity with the Guard is concerned, a federal employee for purposes of the Back Pay Act.[19] Hence, plaintiff's claim under the Back Pay Act for California Guard membership back pay must be dismissed.

### III.

A. We turn now to plaintiff's claim for back pay "from lost employment as a National Guard Technician." Plaintiff grounds the claim on the Back Pay Act. An essential element of the right to recover under the Back Pay Act is that the personnel action which has resulted in loss of pay be "unjustified or unwarranted." This element is absent in the instant case.

■ A prerequisite to plaintiff's former employment as a civilian technician for the National Guard was that he be a member of the National Guard.[20] When he was discharged from the California Guard, thereby ceasing to be a member of the National Guard section 709(e)(1) of 32 U.S.C. (1976)[21] required that his civilian technician employment be terminated. Hence, the termination of this employment was not unjustified or unwarranted. Rather, it was mandated by federal statutory law. The sum effect of this is that the claim in question must be dismissed.[22]

---

18. *Maryland v. United States*, 329 F.2d 722, 729 (3d Cir. 1964) (dictum), *aff'd on other grounds*, 381 U.S. 41, 85 S.Ct. 1293, 14 L.Ed.2d 205 (1965); *cf. Baker v. United States*, 222 Ct.Cl. ——, 614 F.2d 263 (1980) (federal–state cooperative program to reduce unemployment).

19. Rather, he is a state employee. We are aware of no federal constitutional provision, statute, or regulation which authorizes this

court to award monetary relief to a wrongfully discharged state employee.

20. The prerequisite was imposed by 32 U.S.C. § 709(b) (1976). Section 709(b) is quoted in note 5, *supra*.

21. Section 709(e)(1) is quoted in note 5, *supra*.

22. *See generally Borchers v. United States*, 211 Ct.Cl. 299 (1976).

■ B. Because we are unable to award monetary relief to plaintiff, we lack power to grant the collateral relief which he seeks, namely, "an order directing defendant to restore plaintiff to the grade and rank in the Army National Guard which plaintiff would hold, but for [his] involuntary separation [from the California Guard]."[23] Moreover, even if we had the power to grant such an order, it is unlikely that the order would be efficacious because a National Guard unit not in active federal service is a state organization, rather than a federal organization.[24]

### CONCLUSION

Defendant's motion for summary judgment is granted. Plaintiff's cross–motion is denied. The petition is dismissed.

---

**23.** *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1968).

**24.** *Cf. Edwards v. United States,* 206 Ct.Cl. 823, 826–27 (1975).