George W. WRIGHT

v.

The UNITED STATES.

No. 552–89C.

United States Claims Court.

March 21, 1990.

---

George W. Wright, Theodore, Ala., pro se.

J. Andrew Jackson, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

## OPINION

YOCK, Judge.

The plaintiff instituted this action *pro se,* seeking military back pay and other relief arising from personnel actions that occurred while plaintiff was a member of the Mississippi Air National Guard. The case is before the Court on the defendant's motion to dismiss for lack of subject matter jurisdiction, RUSCC 12(b)(1). For the reasons discussed herein, the defendant's motion is granted and the plaintiff's complaint is to be dismissed.

### Facts

The plaintiff, George W. Wright, enlisted in the Mississippi Air National Guard (ANG) and was assigned to the 238th Flight Facilities Flight (FFF) on July 10, 1969. The ANG organizes its personnel according to Unit Manning Documents, which indicate what positions exist in a unit, the rank authorized for each position, and the maximum number of vacancies at each pay grade in a unit.[1] Each rank has a corresponding military pay grade, which determines compensation. ANG regulations contain the procedures and criteria for promotion and demotion.[2]

Mr. Wright was promoted to the rank of Senior Master Sergeant (E–8 grade) on January 16, 1970. Upon completion of the requirements for promotion to Chief Master Sergeant (E–9 grade)[3], he became eligible for promotion to that rank on January 16, 1972. His commander, however, did not recommend Mr. Wright for promotion because all the E–9 pay grade vacancies were filled.[4] According to Mr. Wright, one of these vacancies was occupied by an airman who was promoted in violation of the Unit Manning Document because his E–9 rank exceeded the authorized E–8 rank for his position. Any additional promotion to the E–9 grade level would have created an "overage" which would have prompted the Adjutant General of Mississippi to investigate and could have revealed the improper promotion. Mr. Wright, therefore, suggests that his commander did not promote him because of the prior improper promotion. Mr. Wright cites other examples of promotions made contrary to the Unit Manning Document to illustrate his commander's abuse of authority.

The 238th FFF's demotion policy enumerated five reasons for demotion.[5] The

1. National Guard Unit Manning Document R3518AC (Apr. 1, 1968). Position titles have corresponding ranks and an airman may only hold a rank lower than or the same as that authorized rank. For example, if an airman is a Ground Radar Superintendent, which is assigned the rank of Senior Master Sergeant (E–8 grade), the airman can hold a grade of E–8 or lower, but may not be promoted to E–9.

2. Air National Guard Regulation (ANGR) 39–29 (Aug. 16, 1965) "Promotion and Demotion of Airmen." ANGR 39–29 prohibits promoting an airman unless a unit vacancy exists in the same or higher pay grade to which promotion is contemplated in order to avoid an overage in a particular grade. ANGR 39–29 ¶ 4. The regulation also authorizes state adjutant generals and unit commanders to effect promotion of airmen and authorizes adjutant generals to effect demotion. ANGR 39–29 ¶ 2.

3. The plaintiff's position title was Air Traffic Control Superintendent which had an authorized E–9 grade. The Air Force Board for Correction of Military Records (AFBCMR), which denied plaintiff's application, explained that "[t]he fact that applicant was the Air Traffic Control Superintendent, which had an authorized grade level of E–9, did not automatically entitle him to promotion to that grade. The individual must be recommended for promotion by his Commander." *In the Matter of George W. Wright,* AFBCMR Docket No. 84–00586, 3 (Aug. 26, 1985).

4. By stating in his complaint at paragraph 60 that ANG regulations delegated to his commander the "discretion" to recommend airmen for promotion, plaintiff acknowledges that a military promotion is not an automatic ministerial act, but rather requires the exercise of discretion.

5. ANG regulations authorize state adjutant generals to effect demotions. ANGR 39–29, *supra* note 2. The Mississippi Adjutant General, in turn, authorized unit commanders to effect demotion. Air Directive 9* (April 17, 1972), "Pro-

FFF's commander demoted Mr. Wright to Master Sergeant (E–7 grade) on June 7, 1972, without listing any of the reasons. Mr. Wright claims that he was demoted to create a vacancy at the E–8 grade level for a retired airman who was subsequently assigned to that opening. Consequently, Mr. Wright did not re-enlist when his term expired on July 9, 1972 and was honorably discharged. Following his discharge, Mr. Wright enlisted in the Alabama ANG on July 10, 1972, which assigned him to the 232nd Mobile Communications Squadron at a rank carrying an E–8 pay grade.

Mr. Wright, in letters to the National Guard Bureau and the Mississippi Adjutant General on July 10, 1972, described the circumstances surrounding his demotion and requested investigations. The National Guard Bureau did not make investigations and the Mississippi Adjutant General concluded its investigation by counseling the involved officers and taking no action with respect to Mr. Wright. Because the investigation failed to adequately explain Mr. Wright's demotion to the National Guard Bureau, the Mississippi Adjutant General renewed its investigation at the request of the National Guard Bureau.

The renewed investigation revealed that one officer, involved in the administration of Mr. Wright's demotion, believed that the demotion was directed in accordance with state ANG demotion policy, which permits unit commanders to demote an airman in order to create an opening for another in his former grade level, known as aligning positions.[6] The investigation also revealed that the unit commander believed the unit's effectiveness had deteriorated which required a personnel change to institute new leadership. The unit's deficient condition was reported in 1971 and 1972 Federal Inspection Reports. Consequently, the January 4, 1973, Mississippi Adjutant Gen-

eral investigation report concluded that Mr. Wright was demoted because of inefficiency, pursuant to unit policy, and for alignment, pursuant to Mississippi policy.

Upon review of the report, the Mississippi Adjutant General indicated to the National Guard Bureau that Mr. Wright was demoted pursuant to the Mississippi ANG rule and not the unit regulation regarding inefficiency. The Adjutant General also cited the 1971 and 1972 annual inspection reports which indicated deterioration of the section under Mr. Wright's supervision and served as the basis for his demotion. Upon receipt of the Mississippi Adjutant General's findings, the National Guard Bureau closed the investigation.

Mr. Wright questions his commander's and the Mississippi Adjutant General's reliance on the 1971 and 1972 annual inspection reports because they have never been produced. He claims there is no evidence of deteriorated conditions and, therefore, no basis for his demotion or the Adjutant General's affirmation of the demotion.

According to the plaintiff, no action was taken from October 1972, when he received a final letter from the National Guard Bureau, until April of 1983, which is over ten years after the incident occurred and the final letter was issued. In April of 1983, Mr. Wright learned from an airman, who was an officer in 1972, that the Commander of the plaintiff's Mississippi National Guard unit had resigned in May of 1974. Plaintiff believed that the Mississippi Adjutant General informally pressured the 238th FFF's unit commander to resign because of the embarrassment he caused the Mississippi ANG as a result of improper promotions.

In July 1983, the plaintiff requested both Federal Inspection reports, which served as the basis for his demotion, from the Na-

---

motion and Demotion of Airmen" ¶ 3. In accordance with this grant of authority, the 238th FFF commanders established demotion policy for the unit:

Demotion of Airmen will be made for the following reasons:
a. Failure to attend Unit Training Assemblies.
b. Inefficiency.

c. Misconduct.
d. Voluntary change in assignment.
e. Request of an Airman.
Flight Regulation 39–29 (Apr. 15, 1971), "Promotion and Demotion of Airmen" ¶ 5.

6. Air Directive 9* (Apr. 17, 1972), "Promotion and Demotion of Airmen" ¶ 3(a).

tional Guard Bureau, under the Freedom of Information Act (FOIA). The National Guard Bureau, however, denied his request for this information because it was exempt from disclosure under FOIA.

On August 15, 1983, Mr. Wright applied to the Air Force Board for the Correction of Military Records (AFBCMR) for correction of his military record and back pay due as a result of any retroactive promotion. The AFBCMR denied his application on August 26, 1985. One and one-half years after the AFBCMR rejected Mr. Wright's application, he again requested the same documents on March 18, 1987, from the National Guard Bureau in an effort to obtain new evidence which the AFBCMR required to reconsider his application. The National Guard Bureau, however, responded that it was unable to comply with his request because the records no longer existed.

The plaintiff made several more unsuccessful attempts to obtain those documents from Air Force bases, and he made an unsuccessful appeal to the Secretary of the Air Force. The Secretary indicated, however, that the National Guard Bureau could release the information to the AFBCMR if it wished to reconsider Mr. Wright's application. Upon reapplication on June 7, 1988, the AFBCMR reconsidered the application and requested the inspection records; however, the AFBCMR confirmed that the inspection reports were destroyed pursuant to a regulation requiring such reports to be destroyed after ten years. Accordingly, the AFBCMR rejected Mr. Wright's second application on June 19, 1989, because it had no basis to set aside its earlier decision.

Thereafter the plaintiff filed an action for his claim in this Court on October 11, 1989. In response, the defendant filed its motion to dismiss. In its motion, the defendant asserts that this Court lacks jurisdiction to entertain this claim because the plaintiff was not a federal employee and also that the statute of limitations bars this action.

*Discussion*

In this action, the plaintiff seeks several forms of relief that are clearly outside this Court's jurisdiction. This Court, for instance, cannot retroactively demote other members of the Mississippi ANG, initiate audits and criminal investigations, or grant finders fees, because they are not claims against the United States.[7] Furthermore, the plaintiff seeks retroactive promotion,[8] however, the Claims Court has no authority to order promotions. *See Alford v. United States*, 3 Cl.Ct. 229, 231 (1983) and cases cited therein. Consequently, it cannot award back pay for the difference between the E–9 and E–8 pay grades, which is what the plaintiff would have received if he was promoted.

Although the plaintiff has not articulated his claim with great precision, his only identifiable claim, which is clearly within this Court's jurisdiction, is under the Back Pay Act[9] for recovery of back military pay resulting from the alleged illegal demotion from an E–8 to E–7 pay grade.[10] The defendant, however, asserts that the claim should be dismissed because the plaintiff was not a federal employee as defined in the Back Pay Act and the statute of limita-

---

7. The plaintiff also asserts that his claim is based in equity. The Claims Court, however, does not have the power to entertain equitable claims because it has no equitable jurisdiction under the Tucker Act, 28 U.S.C. § 1491 (1982). *United States v. Testan*, 424 U.S. 392, 397–98, 96 S.Ct. 948, 952–53, 47 L.Ed.2d 114 (1976); *United States v. King*, 395 U.S. 1, 3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969); *see Lee v. Thorton*, 420 U.S. 139, 140, 95 S.Ct. 853, 853, 43 L.Ed.2d 85 (1975); *Richardson v. Morris*, 409 U.S. 464, 465, 93 S.Ct. 629, 630, 34 L.Ed.2d 647 (1973).

8. The plaintiff's belief that his claim for failure to promote is based on a breach of contract

theory is erroneous. An airman does not have an implied unilateral contract with the ANG to be promoted upon becoming eligible for promotion to the next highest rank.

9. 5 U.S.C. § 5596 (1988).

10. The Court recognizes this potential claim for the purpose of considering the motion before the Court, notwithstanding that the day after being discharged from the Mississippi ANG the plaintiff enlisted in the Alabama ANG and received pay at the E–8 grade (his pre-demotion grade) for the period of time on which his claim is based.

tions for this cause of action has expired. For the reasons discussed below, the Court agrees with the defendant; and the plaintiff's complaint will be dismissed.

### A. *A member of a state ANG not on federal duty is not a federal employee*

The first issue raised is whether the plaintiff was a federal employee at the time of his demotion for purposes of the Back Pay Act. If he was not, then the plaintiff cannot assert a claim against the United States. Section 5596 of title 5 of the United States Code authorizes back pay claims against the United States by federal employees who have been the victim of unjustified personnel actions.

The plaintiff contends that he qualified as a federal employee because the Federal Government issued ANG regulations governing promotion procedures, he was paid with federal funds, and a federal agency accepted and reviewed ANG applications for correction of military records. Unfortunately for the plaintiff, however, the United States Court of Claims, this Court's predecessor, has held that a member of a state national guard who has not been called to active federal service is not a federal employee for purposes of the Back Pay Act. *Christoffersen v. United States,* 230 Ct.Cl. 998, 1002 (1982); *Gnagy v. United States,* 225 Ct.Cl. 242, 250, 634 F.2d 574, 579 (1980).

These Court of Claims cases find their genesis in the Supreme Court case of *Maryland v. United States,* 381 U.S. 41, 85 S.Ct. 1293, 14 L.Ed.2d 205 (1965), wherein the Supreme Court held that membership in the National Guard does not constitute federal employment because "[t]he National Guard is the modern Militia reserved to the States by Art. I, § 8, cl. 15, 16 of the Constitution." [11] *Id.* at 46, 85 S.Ct. at 1297; *Gnagy,* 225 Ct.Cl. at 248, 634 F.2d at 578. In supporting its constitutional basis for this holding, the Supreme Court also stated:

> It is not argued here that military members of the Guard are federal employees, even though they are paid with federal funds and must conform to strict federal requirements in order to satisfy training and promotion standards. Their appointment by state authorities and the immediate control exercised over them by the States make it apparent that military members of the Guard are employees of the States, and so the courts of appeals have uniformly held.

*Maryland,* 381 U.S. at 48, 85 S.Ct. at 1298 (citations omitted). Although it was not argued in *Maryland* that members of the National Guard should be classified as federal employees because they are paid by the Federal Government and the Federal Government issues regulations concerning training and promotion; that case held that, in spite of this federal involvement, National Guard members are state employees because states are responsible for appointing members and have immediate control over them.

*Gnagy* relied on *Maryland* in holding that a member of the California Army National Guard was a state employee for purposes of the Back Pay Act in the absence of a statute conferring federal employment status.[12] As further support for its holding, the *Gnagy* Court noted that Congress designed federal statutes concerning the National Guard to protect state responsibility over the National Guard. *Gnagy,* 225 Ct.Cl. at 249–50, 634 F.2d at 579. In that case, the Court cited 10 U.S.C. §§ 101(10), 3079 concerning state control over the Army National Guard. *Id.* Similar lan-

---

**11.** "The Congress shall have Power * * *.

"To provide for organizing, arming, and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and the Authority of training the Militia according to the discipline prescribed by Congress." *Maryland,* 381 U.S. at 46 n. 8, 85 S.Ct. at 1297 n. 8; *Gnagy,* 225 Ct.Cl. at 249, 634 F.2d at 578.

**12.** The Court of Claims in *Gnagy* held that there must not be a statute conferring federal employment status because in *Chaudoin v. Atkinson,* 494 F.2d 1323, 1327 (3d Cir.1974), the Third Circuit held that a civilian technician in the Delaware National Guard was a federal employee because a federal statute, 32 U.S.C. § 709(d), made civilian technicians employees of the United States. *Gnagy,* 225 Ct.Cl. at 246–47, 634 F.2d at 577.

guage in the same statute indicates congressional intention for state control over the Air National Guard. Section 8079 of 10 U.S.C. (1988) states "[w]hen not on active duty, members of the Air National Guard of the United States shall be administered, armed, equipped, and trained in their status as members of the Air National Guard." Section 101(12) of the same title states:

The term "Air National Guard" means that part of the organized militia of the *several States* * * * that—

* * * * * *

(B) is trained, and has its officers appointed, under the sixteenth clause of section 8, article I, of the Constitution * * *. [Emphasis supplied.]

This statute reflects Congress's recognition that the ANG is part of the state's militia. Moreover, according to this statute, *id.,* the states are responsible for administering, arming, equipping, and training the ANG and appointing officers when the ANG is not on active federal duty. It logically follows that the state employs members of the ANG. Therefore, the Constitution, a federal statute, and state control over the National Guard all indicate that membership in the National Guard constitutes state, not federal, employment.

The plaintiff only alleged that he was a member of the Mississippi ANG. No allegations indicate that he was in federal service at the time of his demotion or that any statute conferred federal status on members of the Mississippi ANG at that time. The plaintiff, therefore, is not a federal employee and because he is not entitled to relief under the Back Pay Act, his claim falls outside of this Court's jurisdiction.

B. *The Statute of Limitations also bars the plaintiff's claim in this Court*

■■■ Even if this Court were to find somehow that the plaintiff was a federal employee for the purposes of bringing himself within the Back Pay Act and this Court's jurisdiction, the statute of limitations would also bar the plaintiff's claim. A suit brought against the United States in

the Claims Court is barred if it is not filed within six years of the date upon which the claim first accrued.[13] A cause of action accrues when all events affecting the alleged liability of the United States have occurred. *Kirby v. United States,* 201 Ct.Cl. 527, 532 (1973), *cert. denied,* 417 U.S. 919, 94 S.Ct. 2626, 41 L.Ed.2d 224 (1974) (the cause of action accrued on the date that the plaintiff was discharged); *Oceanic S.S. Co. v. United States,* 165 Ct.Cl. 217, 225 (1964). Since the Court recognizes Mr. Wright's demotion as the basis of his claim, the date of demotion is the date upon which his cause of action accrued. Because the demotion occurred on June 7, 1972, the statute of limitations began to run on that date. Mr. Wright filed this action on October 11, 1989, more than seventeen years after his demotion and more than eleven years after the statute of limitations had expired.

The plaintiff maintains that the statute of limitations does not begin to run until the exhaustion of administrative remedies. Both the Court of Appeals for the Federal Circuit and the Court of Claims have, however, rejected this assertion in prior cases. *See Hurick v. Lehman,* 782 F.2d 984, 987 (Fed.Cir.1986); *Kirby, supra,* 201 Ct.Cl. at 531; *Kirk v. United States,* 164 Ct.Cl. 738, 742–43 (1964). In *Kirby,* the Court found that while the pursuit of post-discharge remedies was permissive, it held that they did not serve to toll the running of the statute of limitations. Accordingly, appeals to the Air Force Discharge Review Board and AFBCMR, in that case, had no effect on the running of the statute. *Kirby,* 201 Ct.Cl. at 531. Similarly, in this case, the plaintiff's application for correction of military records to the AFBCMR has no effect on the statute of limitations and the operable period existed for the six years following Mr. Wright's demotion. Therefore, the plaintiff's claim is also barred by the statute of limitations.

CONCLUSION

The defendant's motion to dismiss for lack of subject matter jurisdiction is grant-

**13.** 28 U.S.C. § 2501 (1988).

ed, and the plaintiff's complaint is to be dismissed.

Each party is to bear its own costs.