**Lester WALKER,**

v.

**The UNITED STATES.**

No. 96–759C.

United States Court of Federal Claims.

April 7, 1998.

Linnie L. Darden, III, Hinesville, GA, attorney of record for plaintiff.

Deborah A. Bynum, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for the defendant. LTC Jack Anderson and Maj. J.S. Dhillon, Department of Air Force, of counsel.

## OPINION

YOCK, Judge.

This hybrid military/civilian pay case is before the Court on the Defendant's Motion to Dismiss, or in the Alternative, for Judgment upon the Record. The plaintiff contends that he deserves a trial on the merits of his Complaint, which alleges that the United States wrongfully discharged him from both his military and civilian positions in the Georgia Air National Guard ("GaANG"). The defendant argues that the Complaint must be dismissed pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") for lack of subject matter jurisdiction or pursuant to RCFC 12(b)(4) for failure to state a claim upon which relief can be granted. Alternatively, the defendant argues that it is entitled to judgment on the record pursuant to RCFC 56.1 on the grounds that there is no genuine issue of material fact and that the defendant is entitled to judgment as a matter of law.

Oral arguments were not requested and are deemed unnecessary. For the reasons addressed below, the defendant's RCFC 12(b)(1) motion is granted with respect to the plaintiff's military pay claims, the defendant's RCFC 12(b)(4) motion is granted with respect to the civilian pay claims, and the plaintiff's Complaint is to be dismissed.

### Factual Background

In August 1993, the plaintiff held the position of staff sergeant in the GaANG. He was also employed as a civilian technician for the National Guard ("Guard"). In August 1993, the plaintiff was seen by medical personnel following a verbal altercation that occurred between the plaintiff and a higher-ranking Guardsman. In September 1993, a military clinical psychologist diagnosed the plaintiff as having recurrent major depression, an adjustment disorder with mixed emotional features, and an obsessive compulsive personality disorder. A three-member medical evaluation board reviewed the plaintiff's records on September 12, 1993. The board cited the diagnoses of recurrent major depression and obsessive compulsive personality disorder in recommending a medical discharge. The plaintiff signed the Medical Board Report on September 12, 1993, acknowledging that he had been informed of the findings and recommendations of the medical board. The hospital commander approved the board's recommendation on October 23, 1993. The Air Surgeon endorsed the report on November 23, 1993, certifying that the plaintiff was medically disqualified for continued Guard service due to recurrent major depression. On November 23, 1993, the Air National Guard Readiness Center

directed the GaANG to discharge the plaintiff due to medical disqualification.

On February 14, 1994, counsel for the plaintiff sent a letter to the GaANG appealing the plaintiff's medical disqualification and the "current attempt to force Sgt. Walker out of the service." In support of the appeal, counsel offered letters from a civilian clinical psychologist and a civilian psychiatrist who asserted that the plaintiff was not violent and that, in their opinions, he was fit for military duty. The psychiatrist opined that the plaintiff's present diagnosis would be major depression, single episode, in full remission.

The Chief of Mental Health Services at the Air Education and Training Command reviewed the information provided by plaintiff's counsel as well as the plaintiff's medical records. He concluded that the civilian psychologist's letter was inapposite, as the plaintiff was medically disqualified due to major depression, not due to violence. As to the civilian psychiatrist's opinion that the plaintiff's major depression was limited to a single episode, the Chief of Mental Health Services found substantial evidence in the medical records that the plaintiff had at least two episodes of depression for which medication was prescribed. The reviewing officer concluded that further evaluation would add no further useful information. The Air Surgeon informed the GaANG that the plaintiff remained medically disqualified.

By order of the Governor of Georgia, the plaintiff was honorably discharged from the GaANG effective April 27, 1994, and by request was transferred to the Air Force Retired Reserve. On May 12, 1994, the Georgia Department of Defense notified the plaintiff that his civilian employment as a technician would be terminated effective June 20, 1994. The notification explained that military membership is a condition of employment as an air technician and that the plaintiff's discharge from his military position in the GaANG, due to medical disqualification, required termination of his civilian employment with the GaANG as well. The administrative record shows that the Office of Personnel Management approved the plaintiff's application for disability retirement from the federal civil service.

On December 2, 1996, the plaintiff filed his Complaint in this Court. He alleges that the medical evaluation board failed to substantiate reasons for concluding that he was medically disqualified; that the board failed to follow appropriate regulations; that his discharges from both his military and civil service positions in the GaANG were arbitrary and capricious and in violation of the Fifth Amendment to the United States Constitution; and that he has suffered financial hardship and distress since his discharges. The plaintiff prays that this Court will take jurisdiction in this matter, find that the plaintiff suffered over $100,000 in damages due to the actions of the United States, and order the plaintiff returned to the Georgia militia and to his previous position as a civilian technician.

## Discussion

### I. The National Guard

The Guard is an organization possessing both federal and state attributes. In each state, the Guard is a state agency, under state authority and control, commanded by the Governor and the state adjutant general, who is appointed by the Governor. *See* 32 U.S.C. § 314 (1994); *Charles v. Rice*, 28 F.3d 1312, 1315 (1st Cir.1994). When not on active federal duty, "the states are responsible for administering, arming, equipping, and training the [Air National Guard]." *Wright v. United States*, 19 Cl.Ct. 779, 784 (1990); 10 U.S.C. §§ 10113, 12401 (1994). The Federal Government, however, prescribes regulations and issues orders to organize, discipline, and govern the Guard. 32 U.S.C. § 110. Federal funds are allocated to organize, equip, and arm the Guard. *Id.* §§ 101(6), 106, 107. States that fail to comply with federal regulations pertaining to the Guard risk forfeiture of the federal funds allocated for Guard purposes. *Id.* § 108.

The Guard is available to serve the state in times of civil strife within state borders. *See Knutson v. Wisconsin Air Nat'l Guard*, 995 F.2d 765, 767 (7th Cir.1993). In addition, each member of the state Air National Guard is concurrently a member of the Air National Guard of the United States ("ANGUS"), a component of the Ready Reserves of the

United States Armed Forces. 10 U.S.C. §§ 10101, 10111, 10145(b); 32 U.S.C. § 101(7). ANGUS is activated when the Guard is called into federal service during national emergencies. *See* 10 U.S.C. §§ 10103, 12406; *Rice*, 28 F.3d at 1312–13.

Some Guard members serve part-time, participating in drills and maneuvers on weekends and during the summer. Guard technicians participate in those activities, but also hold full-time civilian jobs with their units. These Guard technicians are federal civil servants who, by federal statute, must maintain membership in the state Guard to remain qualified for federal employment. The pertinent provisions of the National Guard Technicians Act provide:

> (b) Except as prescribed by the Secretary concerned, a technician employed under subsection (a) shall, while so employed, be a member of the National Guard and hold the military grade specified by the Secretary concerned for that position.
>
> \* \* \* \*
>
> (d) A technician employed under subsection (a) is an employee of the Department of the Army or the Department of the Air Force, as the case may be, and an employee of the United States. \* \* \* \*
>
> (e) Notwithstanding any other provision of law and under regulations prescribed by the Secretary concerned—
>
> > (1) a technician who is employed in a position in which National Guard membership is required as a condition of employment and who is separated from the National Guard or ceases to hold the military grade specified for his position by the Secretary concerned shall be promptly separated from his technician employment by the adjutant general of the jurisdiction concerned;
> >
> > \* \* \* \*
> >
> > (5) a right of appeal which may exist with respect to clause (1), (2), (3), or (4) shall not extend beyond the adjutant general of the jurisdiction concerned.

32 U.S.C. § 709.

## II. *Defendant's RCFC 12(b)(1) Motion*

In assessing the defendant's RCFC 12(b)(1) motion to dismiss the Complaint for lack of subject matter jurisdiction, the Court accepts as true all undisputed allegations of fact asserted by the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). However, the burden of proving that this Court has jurisdiction over the plaintiff's claims rests with the plaintiff. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182, 56 S.Ct. 780, 782, 80 L.Ed. 1135 (1936); *Rocovich v. United States*, 933 F.2d 991, 993 (Fed.Cir. 1991); *Reynolds v. Army and Air Force Exchange Svc.*, 846 F.2d 746, 748 (Fed.Cir. 1988).

The Tucker Act, 28 U.S.C. § 1491 (1994), provides the core governmental consent for suits to be brought against the Government in this Court. The statute provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). This statute, however, does not create any substantive right enforceable against the United States for money damages; rather, it "merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). Consequently, in order to maintain a suit in this Court, the plaintiff must demonstrate that his substantive right to recovery exists in some other provision of the Constitution, act of Congress, or executive department regulation, which specifically waives the Government's sovereign immunity and authorizes suit against the Government for money damages. *United States v. Mitchell*, 463 U.S. 206, 216–17, 103 S.Ct. 2961, 2967–68, 77 L.Ed.2d 580 (1983). In other words, maintenance of a suit here depends on "whether the statutes or constitutional provisions allegedly violated, require the payment of money damages for the violation." *Mur-*

ray v. United States, 817 F.2d 1580, 1583 (Fed.Cir.1987). Equitable relief, such as reinstatement as the plaintiff has requested, may only be granted if it is collateral to a judgment that is steeped in a money-mandating jurisdictional statute. See Skinner v. United States, 219 Ct.Cl. 322, 333–34, 594 F.2d 824, 829 (1979); Hassler v. United States, 34 Fed.Cl. 695, 699 (1996).

The Complaint filed in this case does not reference a money-mandating constitutional provision, statute, or regulation that establishes this Court's jurisdiction over the plaintiff's claims. The plaintiff merely requests, in his prayer for relief, that this Court exercise jurisdiction over his claims.

In its motion to dismiss, the defendant asserts that this Court does not have jurisdiction in this matter. The defendant points out that the plaintiff has not cited a money-mandating provision that would allow this Court to exercise jurisdiction. The defendant further argues that, even if the plaintiff were relying on the Back Pay Act, 5 U.S.C. § 5596 (1994), jurisdiction would still not reside in this Court because that statutory provision does not cover members of the Guard who have not been mobilized into active federal service.

In his response to the defendant's motion, the plaintiff apparently dismisses the arguments advanced by the defendant and asserts that this Court has jurisdiction over his claims pursuant to the Back Pay Act. The plaintiff also asserts that this Court has jurisdiction because a direct violation of the Fifth Amendment right to due process is alleged.

### A. Military Pay Claims

◼ The Back Pay Act establishes a money-mandating provision of law to an employee of a federal executive agency who has undergone "an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee." 5 U.S.C. § 5596(b). The defendant has cited Christoffersen v. United States, 230 Ct.Cl. 998, 1982 WL 25304 (1982), and Gnagy

v. United States, 225 Ct.Cl. 242, 634 F.2d 574 (1980), for the proposition that the Back Pay Act does not establish a jurisdictional basis for the plaintiff's military pay claims because the plaintiff, in his military capacity, was not an employee of a federal executive agency. The Court finds the defendant's argument compelling.

The plaintiff in Gnagy was a member of the California Army National Guard and also was employed as a civilian Guard technician. Sergeant Gnagy was honorably discharged from the Guard after a retention board recommended that he not be retained in the Guard. Pursuant to 32 U.S.C. § 709, Mr. Gnagy's employment as a civilian technician was also terminated because Guard membership was a prerequisite to his civilian employment. Mr. Gnagy filed suit in the United States Court of Claims ("Court of Claims"), this Court's predecessor, claiming that the retention board violated its own regulations in recommending that he be discharged from the Guard. He asked for back pay and other benefits due him as a result of wrongful discharge from the Guard, back pay from lost employment as a Guard technician, and an order directing the United States to restore him to his position in the Guard.

The Court of Claims addressed the Back Pay Act, the jurisdictional basis apparently asserted by Mr. Gnagy, and reasoned that the plaintiff could maintain a Back Pay Act suit "only if his membership in the California Guard qualified him as an 'employee' of a federal 'Executive agency.'" Gnagy, 225 Ct. Cl. at 245, 634 F.2d at 576. Relying on Supreme Court precedent,[1] the Court dismissed the plaintiff's claim for military back pay, holding that "a member of a National Guard unit not in active federal service is not, insofar as his military capacity with the Guard is concerned, a federal employee for purposes of the Back Pay Act." Id. at 250, 634 F.2d at 579. The Court determined that a National Guardsman not in active federal service is a state employee, and could identify "no federal constitutional provision, statute, or regulation which authorizes this court

---

1. Maryland v. United States, 381 U.S. 41, 85 S.Ct. 1293, 14 L.Ed.2d 205, vacated on other grounds, 382 U.S. 159, 86 S.Ct. 305, 15 L.Ed.2d 227 (1965).

to award monetary relief to a wrongfully discharged state employee." *Id.* at 250 n. 19, 634 F.2d at 579 n. 19.

The Court of Claims again addressed the precise issue in *Christoffersen.* In that case, three officers in the Washington State Air National Guard, who were also employed as civilian Guard technicians, were involuntarily retired from the Guard. By operation of 32 U.S.C. § 709, the plaintiffs were also terminated from their civilian technician positions. The plaintiffs brought suit for reinstatement, back pay, allowances, and other damages arising out of the alleged wrongful termination of their employment as federal civilian technicians and their involuntary retirement from the Guard.

The Court of Claims found *Gnagy* controlling, as the plaintiffs did not sufficiently distinguish their case from the precedent. The Court explained that the "[p]laintiffs' attempts to distinguish *Gnagy* fail to come to grips with the underlying rationale of the decision-namely, plaintiffs in their military NG capacity are state, not federal, employees. As a consequence, all of the plaintiffs' substantive claims relate to alleged wrongs to which this court has no jurisdiction." *Christoffersen,* 230 Ct.Cl. at 1002.

Decisions of the former Court of Claims are binding precedent on this Court "unless and until modified by decisions of the United States Court of Appeals for the Federal Circuit or the United States Supreme Court." *West Seattle Gen. Hosp., Inc. v. United States,* 1 Cl.Ct. 745, 746 (1983) (quoting General Order No. 1 of the United States Claims Court); *see also South Corp. v. United States,* 690 F.2d 1368, 1369 (Fed.Cir.1982). Neither *Gnagy* nor *Christoffersen* has been modified. The plaintiff has neither alleged that he was in active federal service at the time of his discharge nor otherwise attempted to distinguish his case from *Gnagy* and *Christoffersen.* Consequently, *Gnagy* and *Christoffersen* require this Court to hold that the Back Pay Act does not provide the jurisdictional basis for addressing the military pay claims of the plaintiff, a state employee. *See also Dehne v. United States,* 970 F.2d 890, 892 (Fed.Cir.1992) (noting that "one must be a federal employee in order to bring a Tucker Act claim based on the Back Pay Act."); *Hassler,* 34 Fed.Cl. at 700 (reciting the general rule "that this court does not possess jurisdiction to review a state National Guard member's claim for wrongful discharge."); *Wright,* 19 Cl.Ct. at 784 (holding that the court did not have jurisdiction over National Guard member's Back Pay Act claims where the plaintiff did not allege that he was in federal service at the time of his demotion).

◼ The plaintiff's contention that the due process clause of the Fifth Amendment of the United States Constitution provides a jurisdictional basis for this Court to address his military pay claims also fails. The plaintiff in *Gnagy* alleged the same jurisdictional basis, to which the Court of Claims responded that "[n]othing in the due process clause of the fifth amendment * * * mandates the payment of money to a person suffering [its] violation." *Gnagy,* 225 Ct.Cl. at 245 n. 7, 634 F.2d at 576 n. 7. *See also Muehlen v. United States,* 209 Ct.Cl. 690; *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002 (1967); *Hassler,* 34 Fed.Cl. at 700 n. 8. This Court is constrained to reach the same conclusion.

The plaintiff has the burden of showing that this Court has jurisdiction over claims arising out of his alleged wrongful discharge from his military position in the Guard. He has failed to do so. This Court does not have jurisdiction to award monetary damages for an alleged wrongful discharge from a state military position, nor does it have jurisdiction to award the collateral relief of reinstating the plaintiff to his former position as a staff sergeant in the Guard. Accordingly, the defendant's RCFC 12(b)(1) motion to dismiss for want of subject matter jurisdiction is granted with respect to claims arising out of the plaintiff's discharge from his state military position.

### B. *Civilian Pay Claims*

◼ The Back Pay Act does provide the requisite jurisdictional basis for this Court to consider claims arising out of the termination of the plaintiff's civilian technician position. The Back Pay Act establishes a money-man-

dating provision of law to an employee of a federal executive agency who has undergone "an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances, or differentials of the employee." 5 U.S.C. § 5596(b)(1). A civilian technician in the Air National Guard is an employee of the Department of the Air Force and of the United States. 32 U.S.C. § 709(d). Accordingly, the plaintiff has properly invoked the Back Pay Act as a jurisdictional basis for claims relating to his alleged wrongful discharge from his federal civil service position. *See, e.g., Athas v. United States,* 220 Ct.Cl. 96, 597 F.2d 722 (1979) (asserting jurisdiction over National Guard technicians' claims for back pay and reinstatement).

### III. *Defendant's RCFC 12(b)(4) Motion*

The fact that this Court has jurisdiction over the plaintiff's civilian pay claims, however, does not necessarily entitle the plaintiff to the trial that he requests. The defendant has moved to dismiss the plaintiff's claims for failure to state a claim upon which relief can be granted. Such motion can properly intercede and prevent trial if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Sanders v. United States,* 34 Fed.Cl. 38, 43 (1995). In evaluating the defendant's motion to dismiss pursuant to RCFC 12(b)(4), "the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Sanders,* 34 Fed.Cl. at 42. However, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Id.* at 43.

In order to maintain a suit under the Back Pay Act, the plaintiff must be able to allege some set of facts in support of his claim that the termination of his civilian technician job was "unjustified or unwarranted." 5 U.S.C. § 5596(b)(1). In response to the Government's motion, however, the plaintiff agrees with the defendant that termination of his civilian job was mandated by 32 U.S.C.

§ 709(e). Viewing all allegations of the Complaint in the light most favorable to the plaintiff, it is apparent that the plaintiff can only show that his termination was effected by operation of law, not by some unjustified or unwarranted personnel action on the part of the United States.

Again, *Gnagy* and *Christoffersen* provide binding precedent for the disposition of the plaintiff's claims. In dismissing the plaintiff's Back Pay Act claims with respect to civilian pay claims in *Gnagy,* the Court of Claims explicated a rationale that is equally applicable to the plaintiff in the instant case:

> A prerequisite to plaintiff's former employment as a civilian technician for the National Guard was that he be a member of the National Guard. When he was discharged from the [ ] Guard, thereby ceasing to be a member of the National Guard, section 709(e)(1) of 32 U.S.C. (1976) required that his civilian technician employment be terminated. Hence, the termination of this employment was not unjustified or unwarranted. Rather, it was mandated by federal statutory law. The sum effect of this is that the claim in question must be dismissed.

*Gnagy,* 225 Ct.Cl. at 251, 634 F.2d at 579 (footnotes omitted). Similarly, in *Christoffersen,* the Court of Claims denied relief because the "[p]laintiffs have not cited any cases where a federal cause of action arose from the loss of a federal technician position due to operation of law under 32 U.S.C. § 709(e)(1)." *Christoffersen,* 230 Ct.Cl. at 1003. In holding that the plaintiffs failed to state a claim upon which relief could be granted, the Court of Claims explained:

> As in *Gnagy,* plaintiffs were terminated from their technician positions due to the loss of their military positions in the NG. Such termination was mandated by statute. 32 U.S.C. § 709(e)(1). Any claim of illegality resulting from plaintiffs' termination, therefore, must by necessity turn on plaintiffs' loss of their military NG positions. Since we have previously stated that a military member of the NG, not in active federal service, is a state employee, plaintiffs have no basis for recovery of monetary damages against the United

States in these circumstances. Even if it can be shown that plaintiffs' dismissal from the NG was improper, such an action would not properly be before this court.

*Id.* at 1004.

The plaintiff in the instant case is in the same position as were the plaintiffs in *Gnagy* and *Christoffersen*. When Mr. Walker was discharged from his state military position, federal law mandated that his civilian technician position be terminated. Such termination was not unjustified or unwarranted; as the plaintiff concedes, the termination was required by statute. The plaintiff could allege no set of facts that would negate the operation of 32 U.S.C. § 709(e)(1), and thus he has failed to state a claim upon which this Court could grant relief. Accordingly, the defendant's RCFC 12(b)(4) motion to dismiss for failure to state a claim is granted with respect to claims arising out of the termination of the plaintiff's civilian technician position.

### CONCLUSION

For the reasons discussed above, the defendant's motion to dismiss for lack of jurisdiction over the subject matter is granted with respect to the plaintiff's military pay claims. The defendant's motion to dismiss for failure to state a claim upon which relief may be granted is allowed with respect to the plaintiff's civilian pay claims. The plaintiff's Complaint is to be dismissed. Because all of the plaintiff's claims are to be dismissed pursuant to RCFC 12(b)(1) and RCFC 12(b)(4), the defendant's alternative motion for judgment on the record is moot.

Each party is to bear its own costs.