Roger E. **AUSTIN**, Plaintiff,

v.

**UNITED STATES** of America et al., Defendants.

Civ. No. W–4716.

United States District Court, D. Kansas.

April 24, 1975.

Jim Lawing, Wichita, Kan., for plaintiff.

Robert J. Roth, U. S. Atty., W. Irving Shaw, Asst. U. S. Atty., Wichita, Kan., for defendants.

## MEMORANDUM AND ORDER FINDINGS OF FACT AND CONCLUSIONS OF LAW

WESLEY E. BROWN, Chief Judge.

This is an action brought by a former member of the Delaware Air National Guard wherein he claims that he is entitled to disability benefits under 32 U.S. C. § 318 and 10 U.S.C. § 1201 et seq., for spondylolisthesis of the fifth lumbar vertebra; that the defendants should be ordered to reinstate the plaintiff's enlistment; or, that the defendants should be compelled to convene a physical evaluation board and medical evaluation board for the purpose of determining whether or not plaintiff has sustained a service-connected injury or disease. The defendants contend that there is no basis in fact for the claim to disability benefits; that the spondylolisthesis is a congenital ailment, not service-connected; and that plaintiff is medically unfit to be retained in an enlistment status.

It is undisputed that the plaintiff is medically unfit for worldwide duty. This was the reason for plaintiff's discharge and plaintiff has offered no evidence to the contrary. Thus, we cannot order his reinstatement. Furthermore, it is not the function of the courts to determine the factual question of whether or not the plaintiff has sustained a service-connected injury or disease. The real question is whether or not the plaintiff is entitled to present the issue of his claim for disability to an evaluation board pursuant to the Air Force regulations. Plaintiff has been denied this opportunity. Therefore, our review is limited to a determination as to whether the Air Force has complied with its own rules and regulations. Upon that basis and after considering the evidence and the briefs of the parties, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. On May 17, 1965 Roger Austin, a member of the Delaware Air National Guard, with over 12 years of service, was ordered to active duty for a period of 45 days.

2. On June 15, 1965, while on active duty as a reservist, Austin was injured in an automobile accident and was hospitalized for treatment. His injuries were diagnosed as surgical shock, cerebral concussion, severe laceration of the right and left forehead, extensive lacerations of the anterior abdominal wall and epigastrium, severe abrasions of the right chest, and multiple contusions and abrasions of the head, chest, right arm and right hand. On July 7, 1965, a determination was made by the Air Force that the accident on June 15, 1965, was in the "line of duty." Exhibit 6.

3. On August 9, 1965, Austin was given a medical examination. Among other complaints, Austin complained of recurrent back pain. An x-ray examination of the lumbar spine taken on August 11, 1965, found all vertebral bodies and spaces normal and unremarkable. Exhibit B–36. Austin was released from the hospital and thereafter certified for flying status with an indefinite waiver for a history of head injury and a peptic ulcer. Exhibits A–35 and A–37.

4. On November 6, 1965, Austin was examined for flight status. He noted on the personal history form that he experienced recurrent back pain. The examining physician noted that "There has been no change in physical condition since last physical examination 29 Jul 65. * * * Auto accident with unconsciousness (2 min), multiple lacerations, orthopedic consultations and neurology consultation with EEG all within normal limits, 15 Jun 1965." Exhibits A–31 and H.

5. On October 22, 1966, Austin was examined for flight status. He again complained of recurrent back pain. The physician found the spine to be "normal." And, after finding Austin to

have suffered some slight hearing loss since the last examination, the physician concluded, "No other significant change in medical history since last physical exam 6 Nov 1965." Exhibit I. On November 22, 1966, Austin was certified medically qualified with a waiver for history of duodenal ulcer and head injury. Exhibit A–24.

6. On November 18, 1967, Austin was again examined for flight status. The form used to complete the history of the patient did not contain a space for the patient to note any back pain. However, the examining physician found the spine to be normal. And, after noting the presence of a duodenal ulcer and no evidence of heart disease, the physician noted that Austin "Denies all other significant medical or surgical history." Exhibit J.

7. On March 20, 1968, Austin was certified by the Air Force as "medically acceptable for General Service with waiver valid until 11 November 1969 for history of recurring duodenal ulcer, presently asymptomatic." Exhibit A–19.

8. On May 25, 1968, during a routine examination for flight status, Austin made no complaint of recurrent back pain. Exhibit A–15. The physician found no abnormalities of the spine and noted, "Patient had low back pain and occasional dizzy spells upon change of body positions, last episode July 1965, no comp. no seq." Exhibits A–16 and K.

9. On March 31, 1970, after examining x-ray films taken on August 9, 1965, May 7, 1969, and March 10, 1970, the examining physician, apparently on referral from the Veterans' Administration, concluded that Austin suffered from 1st degree spondylolisthesis of L5 during the period from August 9, 1965, to March 10, 1970, with no change. Exhibit 4.

10. On August 18, 1970, Austin was given a periodic physical examination by the Air Force. An x-ray examination of the lumbar spine indicated spondylo-listhesis, L5 on S1, Grade 1 (less than 25%). Exhibits A–2, B–10 and B–11.

11. On or about April 2, 1971, Austin received a letter from the Department of the Air Force notifying him that his request for a medical evaluation board and a physical evaluation board to evaluate a claim for disability was being considered by the Surgeon General and that he was to be contacted by the Air Reserve Personnel Center as to the date and place of the medical evaluation board. Exhibit 7. No further contact in this regard appears in the record.

12. On October 5, 1971, Austin was notified by the Department of the Air Force that it proposed to honorably discharge him from his enlistment in the reserves for medical reasons by virtue of the spondylolisthesis. Exhibit 8. Two conflicting medical reports had been filed pertaining to Austin's medical fitness for worldwide service. On May 10, 1972, at Austin's request, a disposition board was convened to determine the limited issue of whether or not he was qualified for worldwide duty. At the hearing, Austin admitted that he was qualified for worldwide duty. At the hearing, Austin admitted that he was not medically fit for duty. The Board found that he was not qualified for duty and recommended an honorable discharge from his enlistment in the reserves. Exhibit 2. Austin was thereafter discharged honorably from his enlistment.

13. Austin applied to the Board for the Correction of Military Records to correct the discharge to reflect a service-connected disability. His application was summarily denied. Exhibit E.

14. Austin thereafter applied to the Veterans' Administration for disability benefits pursuant to 38 U.S.C. § 310 et seq. Based on the x-rays and the medical examinations in the record, the Administration found Austin's spondylolisthesis to be service-connected as a result of the automobile accident in 1965 and awarded disability benefits. Exhibit 3.

15. At no time did the Air Force convene a medical evaluation board or physical evaluation board to determine whether or not the spondylolisthesis was a service-connected injury or disease for the purpose of permanent disability benefits available under 10 U.S.C. § 1201 et seq.

16. The applicable regulations for the convening of a medical evaluation board and a physical evaluation board are found in Air Force Manual 35–4.

17. We expressly make no finding with respect to the merits of Austin's claims for disability benefits arising from the 1965 accident and not medically diagnosed until 1970.

## CONCLUSIONS OF LAW

■ 1. We conclude that the Court has jurisdiction under the Administrative Procedure Act, 5 U.S.C. § 701 et seq., and that the plaintiff has exhausted his administrative remedies. Bard v. Seamans, 507 F.2d 765 (10th Cir. 1974). Furthermore, where the military fails to adhere to its own rules and regulations in prejudice to one of its members, federal courts have jurisdiction to compel compliance. Hall v. Fry, 509 F.2d 1105 (10th Cir. 1975).

2. Under 32 U.S.C. § 318 a member of the National Guard is entitled to the same benefits as a member of the Regular Air Force or Army when he is called to active duty—

> "(1) for a period of more than 30 days, and is disabled in line of duty from disease while so employed; or
>
> "(2) for any period of time, and is disabled in line of duty from injury while so employed."

10 U.S.C. § 1201 provides the authority of the Secretary for *retiring* a member with disability retirement pay. For Austin to qualify he must be unfit to perform his duty by virtue of a permanent disability "incurred while entitled to basic pay," and have at least a 30% disability. (The evidence indicates that Austin has less than 20 years of service and more than 8 years of service.) 10 U.S.C. § 1203 provides the authority of the Secretary for *separating* a member with severance pay. The difference between § 1201 and § 1203, as they pertain to Austin, is that Austin would be entitled to severance pay if he meets the same criteria under § 1201 but his disability is less than 30%. Essential to either retirement or separation under these provisions is the finding that a permanent disability was incurred while entitled to basic pay. Air Force Manual 35–4 sets forth the procedure for making this factual determination.

3. Under Section 2–10(b)(1) of AFM 35–4, a medical board evaluation is mandatory if the member's acceptability for worldwide duty is in doubt and he has a medical condition or physical defect listed in Attachment 5. Spondylolisthesis is a listed impairment. The medical board is to consist of not less than three officers who will make one of the following recommendations: (1) referral to a physical evaluation board, (2) retention in a limited assignment status, (3) return to duty, (4) discharge from the service by reason of a physical disability which existed prior to the service and has not been aggravated thereby, (5) reassignment to another hospital for observation, treatment and disposition, (6) a continuation of military hospitalization, or (7) that treatment under AFM 35–4 is not appropriate. Sections 2–15 and 2–18. Referral to a physical evaluation board is to be made when the impairment will interfere with worldwide service. Section 2–18(a). A physical evaluation board must be convened unless the member waives the proceedings in writing. Section 8–7. There is no evidence of waiver. As indicated in the regulations, one purpose of convening a physical evaluation board is to determine whether the member suffers from a permanent disability such as to qualify him for either retirement or separation benefits.

■ 4. As noted above, when a member incurs a medical impairment

which would interfere with his ability to perform worldwide duty, a medical evaluation board must be convened to determine the member's medical qualifications for such duty. If the board determines that the member is not qualified, a physical evaluation board is convened automatically to determine whether the member is entitled to benefits under 10 U.S.C. § 1201 et seq. In this case there is no evidence that either evaluation board was convened. The result is that Austin has been denied the opportunity to present the issue of his disability to a board of medical officers; and that he has been summarily denied the opportunity for disability benefits to which he may be otherwise entitled under the law. This result is inconsistent with the regulations, the law, and the notions of due process.

5. The defendants argue that there is no basis in fact for plaintiff's claim for disability benefits. In this regard, defendants contend that spondylolisthesis is always congenital and not service-connected. Simply stated, the defendants argue facts, not the law. The record contains conflicting medical reports as to the nature of Austin's ailment. Whether Austin is entitled to disability benefits under 10 U.S.C. § 1201 et seq. is a question of fact which must be resolved in accordance with AFM 35–4.

6. Austin has prayed that the Court order the defendants to reinstate his enlistment. This we cannot do. The issue of his unfitness for worldwide duty was never contested by Austin. His discharge, therefore, was proper in this regard.

7. Austin has also prayed that the Court determine the nature of his disability. This we likewise cannot do. The matter must be presented to the Secretary of the appropriate armed force for resolution. Our jurisdiction is limited to a review of the record for substantial evidence and whether there has been compliance with the military's rules and regulations and with the law.

For the reasons stated herein,

It is by the Court Ordered that the defendants shall convene the appropriate evaluation boards pursuant to AFM 35–4 within 180 days for the purpose of determining whether or not Austin qualifies for disability benefits available under 10 U.S.C. § 1201 et seq. The Clerk shall enter judgment accordingly and shall transmit copies of this Memorandum and Order to the respective parties and to their counsel.