John Martin YOUNT,
Plaintiff/Appellant,

v.

STATE of Tennessee,
Defendant/Appellee.

Supreme Court of Tennessee,
at Nashville.

July 10, 1989.

Dan R. Alexander, Nashville, for plaintiff/appellant.

Charles W. Burson, Atty. Gen. & Reporter and Kimberly J. Dean, Asst. Atty. Gen., Nashville, for defendant/appellee.

OPINION

DROWOTA, Chief Justice.

This appeal presents a question concerning the scope of worker's compensation coverage available to national guardsmen who are injured in training. The order of the Claims Commission granting summary judgment in favor of the State is before this Court pursuant to T.C.A. §§ 9–8–403(a)(1) (1987), 50–6–225(e) (Supp.1988).

The material facts are not disputed. Plaintiff John Martin Yount was a member of the Tennessee Air National Guard from December 11, 1981, until September 15, 1986. Under orders effective November 17–21, 1983, Plaintiff was acting as navigator of an aircraft when he suffered back injuries in an episode of air turbulence on November 20, on the return trip from the nation of Panama.

The pertinent orders are included in the record. They were issued under the authority of "10 U.S.C. § 672(d)" "By Order of the Secretary of the Air Force." They order Plaintiff to "Active Duty for [4] days" and describe the duty as "Spec Trng (Federal)."[1] His destination was Howard Air Base in Panama. Affidavits from military personnel also describe the mission as federal active duty for training.

On return to this country, Yount was treated first at a Navy Hospital in Pensacola, Florida, and then by a private physician in Nashville. Subsequently, a "line of duty" determination was made by the Air Force, and substantial incapacitation pay and medical expenses were awarded.

On February 24, 1987, Yount filed a claim for permanent disability benefits with the Tennessee Division of Claims Administration. The disability was not disputed, and both parties moved for summary judgment on the single question whether Plaintiff was an employee of the State at the time of his injury. The Commissioner ruled that Plaintiff was on federal active duty at the time of his injury and therefore not acting in the employ of the State.

At the time of Plaintiff's injury, the following statutes governed compensation for national guardsmen:

T.C.A. § 58–1–230 provides:

(a) DEATH (1) The state board of claims is directed to pay a death benefit to or for the survivor prescribed in the third paragraph hereof, upon receiving certification by the adjutant general of the State of Tennessee, of the death of any member of the Tennessee national guard who:

(A) Dies while performing full-time training, or duty under §§ 58–1–106, 58–

---

1. One category not marked on the orders is "Spec Trng (State)."

1–108 and 58–1–205, or while going to or returning from the same.

. . . .

(b) INJURIES. When any member of the Tennessee national guard is injured while performing duty as set forth in subdivision (1) hereof, the state board of claims shall compensate him in the same manner and to the same extent as now provided under the Workmen's Compensation Law of this state compiled in title 50, chapters 9–12, or as said law shall hereinafter be amended....

T.C.A. § 58–1–106 authorizes the Governor "in case of invasions, disaster, ... or other grave emergency, to order into the active service of the state ... the Tennessee national guard."

T.C.A. § 58–1–108 authorizes the Governor "to call individual members of the national guard to active state duty ... for the performance of any official duty in connection with national guard activities."

T.C.A. § 58–1–205 provides:
Members and units of the Tennessee national guard shall assemble for such drill, or other equivalent training, instruction or duties during each year, and shall participate in such field training, encampments, maneuvers, schools, conferences, or other similar duties each year as may be ordered by competent authority; . . . . [2]

Plaintiff's mission to Panama plainly was not under the call of the Governor under sections 58–1–106 and 58–1–108. The question is whether federal active duty on a training mission authorized under Title 10, section 672(d) of the United States Code is "field training," "maneuvers," or "other similar duties" contemplated by T.C.A. § 58–1–205.

Similar issues have arisen in other states, but unlike analogous statutes in those jurisdictions, sections 58–1–205 and 58–1–230 have no express exclusion for federal service and no limitation to state service. *Cf. Kentucky National Guard v. Bayles*, 535 S.W.2d 234 (Ky.1976); *Lucas v. Military Department*, 498 So.2d 161 (La.1986); *Farrier v. Connor*, 466 N.E.2d 557 (Ohio 1984).

The status of a national guardsman and the overlap of federal and state authority have also been the subject of federal decisions in other contexts. See, for example, *Maryland v. United States*, 381 U.S. 41, 85 S.Ct. 1293, 14 L.Ed.2d 205 (1965) (Federal Tort Claims Act); *Gnagy v. United States*, 634 F.2d 574 (Ct.Cl.1980) (federal back pay act); *Johnson v. Powell*, 414 F.2d 1060 (5th Cir.1969) (Presidential authority to activate the Guard for "national exigency"). In particular, constitutional authority under 10 U.S.C. § 672(b) and (d) to activate the Guard for training without a Governor's consent is the subject of pending litigation. *Perpich v. United States Dept. of Defense*, 666 F.Supp. 1319 (D.Minn.1987), affirmed 880 F.2d 11 (8th Cir.1989), *vacated and rehearing granted* (Jan. 11, 1989); *Dukakis v. United States Dept. of Defense*, 686 F.Supp. 30 (D.Mass.1988), *affirmed* 859 F.2d 1066 (1st Cir.1988), *cert. denied* — U.S. ——, 109 S.Ct. 1743, 104 L.Ed.2d 181 (1989).

While none of these decisions disposes of the question in this case, we do glean from them the military scheme as background. In general, a national guardsman has a dual status. As a member of the Tennessee National Guard he serves under the Governor and subordinate authority. His training is thoroughly regulated, staffed, and funded by the federal government under Title 32 of the United States Code, which also provides various disability bene-

---

**2.** Parenthetically, Plaintiff's reliance on T.C.A. § 9–8–203 is mistaken. The above statutes specifically referring to the "Tennessee national guard" were enacted in Part 2 of the Tennessee Military Code of 1970. Part 4 authorized a volunteer force distinct from the national guard "to be known as the Tennessee state guard." *See* 1970 Tenn.Pub.Acts (Adj. S.) ch. 596. Section 9–8–203 remained in effect, presumably to provide compensation for these forces. It was later repealed by legislation creating the Tennessee Claims Commission. 1984 Tenn.Pub.Acts, ch. 972 § 19. Substantively, the statutes are the same. Section 9–8–203 authorized compensation for injuries sustained "while on active duty or service under the call of the governor, or while in attendance at duly authorized army drills, formations, or training camps." It declared members of the "Tennessee state guard" to be state employees on these occasions.

fits. The State represents to the Court that the familiar weekend drills and summer training are under the Title 32 umbrella. The record shows these are "required" and are "generally" conducted under Title 32.

A guardsman is also a member of the National Guard of the United States, which is a reserve component of the United States armed forces. In this capacity Plaintiff was subject to being called to active duty by the Secretary of the Air Force. 10 U.S.C. § 672 authorizes such service for reserve components generally, including National Guard members. Subsection (a) authorizes "active duty (other than for training) in time of war or national emergency declared by Congress ... without the consent of the persons affected ... for the duration of the war or emergency." Subsection (b) authorizes the Secretary to order reserve members or units to active duty "at any time" without their consent, for not more than 15 days a year. Subsection (d) authorizes active duty with a reservist's consent, apparently for an unlimited time. Under (b) and (d) the purpose is not limited. At the time of the mission in this case, active duty orders under subsection (b) and (d) for reservists who were also national guardsmen required the Governor's consent. These provisions were in place when Title 58 of the Tennessee Code was enacted in 1970. The State does not contend the Governor withheld his consent in this case.

In addition to this background, we are aware that in 1986 the Attorney General, the Comptroller, the Treasurer, and the Governor proposed an amendment to coordinate federal and state benefits to guardsmen, 1986 Tenn.Pub. Acts, ch. 626, § 8. Summary of General Bills, Senate Calendar, March 3, 1986. T.C.A. § 58–1–230(c) (Supp.1988) now reduces any state compensation benefits by amounts paid by the federal government.

The State proposes that any "Title 10" duty be deemed outside the coverage of T.C.A. § 58–1–230, and 58–1–205. We decline to rule so broadly, especially since section 58–1–205 refers to training "each year" and the record does not show that annual required training is always and necessarily conducted under Title 32.

Nonetheless, this record shows that Plaintiff was injured while exclusively on federal active duty. The State had no control over Plaintiff's military activities under order number AC–197 TN dated November 17, 1983. Plaintiff was not a state employee at the time of his injury on November 20, 1983. Accordingly, the judgment of the trial court is affirmed. Costs are taxed to the Appellant.

FONES, COOPER, HARBISON and O'BRIEN, JJ., concur.