**John Martin YOUNT, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 90–1026C.

United States Claims Court.

June 12, 1991.

which plaintiff opposes. Plaintiff John M. Yount (Yount), a former member of the Tennessee Air National Guard, seeks, in his complaint, to set aside his discharge for misconduct, to be reinstated with back pay and allowances, and to be considered for disability retirement benefits.[1] On May 1, 1991, the court heard oral argument on the motion now pending before the court and thereafter entertained supplemental briefs filed by the parties. For the following reasons, defendant's motion for summary judgment is granted relative to plaintiff's wrongful discharge claim. With regard to plaintiff's disability retirement claim, defendant's motion for summary judgment is denied, and the case is remanded to the Secretary of the Air Force for consideration of plaintiff's entitlement to disability retirement benefits.

Dan R. Alexander, Nashville, Tenn., for plaintiff.

Mark D. Rubino, Washington, D.C., with whom were Asst. Atty. Gen. Stuart M. Gerson, Director David M. Cohen and Asst. Director James M. Kinsella, for defendant. Major Alice Kottmyer, Dept. of Air Force, of counsel.

## OPINION

LYDON, Senior Judge:

This military pay case is before the court on defendant's motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction, pursuant to RUSCC 12(b)(1), or, in the alternative, for summary judgment,

## FACTS

Plaintiff served five years, seven months and five days on active duty with the United States Air Force Reserve (Reserve) until his voluntary release on October 15, 1979 with an honorable discharge. Plaintiff was appointed to the Tennessee Air National Guard (TANG) on December 11, 1981 and remained a member until he was involuntarily released on September 15, 1986 with a discharge under other than honorable conditions.

On November 20, 1983, while on active duty as a flight navigator with the TANG, plaintiff injured his back during a turbulent flight returning from a training exercise in Panama. Plaintiff's back injury dis-

---

1. Plaintiff attempts to invoke the court's jurisdiction by citing three jurisdictional statutes that apply only to federal district courts: 28 U.S.C. § 1331 (federal district courts have federal question jurisdiction); 28 U.S.C. § 1346 (federal district courts have jurisdiction over claims arising under Little Tucker Act and Federal Tort Claims Act); and 28 U.S.C. § 1361 (mandamus power of federal district courts). *See Froudi v. United States*, 22 Cl.Ct. 290, 295 (1991) (28 U.S.C. § 1346 does not grant jurisdiction to Claims Court).

    In addition, plaintiff attempts to invoke the court's jurisdiction by citing 5 U.S.C. § 702, a provision of the Administrative Procedure Act (APA). However, section 702 cannot serve as a jurisdictional basis for plaintiff's complaint, because section 702 is limited by its terms to actions for judicial review of agency actions seeking relief other than money damages. 5 U.S.C. § 702; *Mitchell v. United States*, 930 F.2d 893, 895 (Fed.Cir.1991); *Froudi, supra*, 22 Cl.Ct. at 296; *Paskert v. United States*, 20 Cl.Ct. 65, 77 (1990) (APA does not grant jurisdiction to court to entertain military pay claims). The court's jurisdiction is limited by the Tucker Act, 28 U.S.C. § 1491, to claims against the United States for money damages. *See United States v. King*, 395 U.S. 1, 3, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969); *Paskert, supra*, 20 Cl.Ct. at 77. *See also Mitchell, supra*, 930 F.2d at 896–97.

qualified him from flying until December 28, 1983, when he was returned to flying status after a civilian physician, Dr. Oglesby, found plaintiff to be "free of symptoms." Plaintiff carried out his normal duties and remained on flying status until September 12, 1984.

On July 15, 1984, plaintiff's commander recommended that action be taken, pursuant to Air National Guard Regulation (ANGR) 36–014, with regard to plaintiff's pattern of misconduct between January 31, 1982 and June 10, 1984. Plaintiff received notice of this action by letter dated August 29, 1984.

On September 12, 1984, plaintiff returned to Dr. Oglesby complaining of back pain, and he was again removed from flying status. On September 24, 1984, Dr. Oglesby submitted a statement to the TANG indicating that plaintiff told him his back injury had not completely healed in the nine months since Dr. Oglesby had last seen plaintiff.

On April 12, 1985, a Medical Evaluation Board (MEB) was convened. Plaintiff was diagnosed as suffering from "[l]ow back pain, probably secondary to severe torsional stress with probable subsequent annular tear and facet disruption at the L ⅘ interval." The MEB recommended that plaintiff be returned to regular duty. However, plaintiff's commander directed a Physical Evaluation Board (PEB) to evaluate plaintiff. This Board convened on April 29, 1985. Although the PEB rendered the same diagnosis as the MEB, the PEB disapproved the MEB's recommendation, and instead recommended that plaintiff be placed

on temporary disability retirement with forty percent disability. Neither of the Boards found plaintiff's back injury to be connected with intentional misconduct on plaintiff's part.

Thereafter, it became apparent to the Secretary of the Air Force, presumably because of Yount's situation, that Air Force regulations did not specifically address dual processing of ANG cases for both disability and misconduct. After the Air Force's legal staff reviewed plaintiff's case and determined that Air Force regulations did not prohibit dual processing, ANGR 36–014 was amended, on August 20, 1985, to specifically provide for such dual processing. As amended, ANGR 36–014 paralleled the Air Force regulation authorizing dual processing. The amendment also authorized the withholding of a medical discharge pending consideration of a discharge for unfitness under ANGR 36–014.

On September 11, 1985, the Secretary of the Air Force withheld a final determination in the medical disability action, and directed the TANG to resume processing the misconduct action against plaintiff.

An Officers Efficiency Board (OEB) was convened on December 11, 1985, to consider the allegations of misconduct against plaintiff, and to make a recommendation as to whether he should be discharged from the TANG. Plaintiff was represented by appointed Air Force counsel at the OEB. After considering both oral and documentary evidence, the OEB found plaintiff had engaged in several acts of misconduct, and recommended that he be discharged under other than honorable conditions.[2]

2. The OEB made the following findings with regard to the misconduct charges against plaintiff:

(1) That Captain John M. Yount was arrested and convicted for three incidents of DUI [driving under the influence] between 1982 and 1984, and such conduct on Captain Yount's part did constitute misconduct.

(2) That Captain John M. Yount was arrested for indecent exposure while publicly urinating in Phenix City, Alabama, and such conduct did constitute unacceptable conduct on the part of Captain Yount.

(3) That Captain John M. Yount was involved in an incident of failing to return his crew vehicle to his aircraft commander and

was thereafter late for briefing at the Red Flag Exercise, and this conduct on Captain Yount's part did not constitute misconduct.

(4) That Captain John M. Yount did not create a disturbance at the Lajes Air Force Base BOQ [bachelor officer quarters] by making noise; however, he did cause an incident, a police blotter report, through his confrontation with a senior officer.

(5) That Captain John M. Yount was involved in a disturbance, while intoxicated, at the hotel in Tucson, Arizona, and that these actions on the part of Captain Yount did constitute misconduct.

(6) That Captain John M. Yount was involved in a public disturbance, while intoxi-

On June 27, 1986, plaintiff's case was reviewed by the General Law Division of the Office of the Judge Advocate General (JAG), which upheld the OEB's recommendation to discharge plaintiff under other than honorable conditions.

On July 3, 1986, the Air Force Personnel Board found that plaintiff had failed to establish that he should be retained in the Air Force. On August 1, 1986, the Secretary of the Air Force ordered that plaintiff's federal recognition be withdrawn.[3] In addition, the Secretary terminated plaintiff's appointment as a reserve officer in the Air Force, directed that he be discharged under other than honorable conditions, and terminated his disability action.

On October 21, 1986, plaintiff filed a civil action in the United States District Court for the Middle District of Tennessee in Nashville, Tennessee, against the Air Force, the Military Department of Tennessee, and the Adjutant General of TANG. The case was dismissed without prejudice because plaintiff had failed to exhaust his administrative remedies by appealing to the Air Force Board for the Correction of Military Records (AFBCMR or correction board).

On February 24, 1987, plaintiff filed a claim for permanent disability benefits with the Tennessee Division of Claims Administration for his 1983 back injury. When the Commissioner ruled that plaintiff was on federal active duty at the time of his injury, and thus was not a state employee for purposes of workers' compensation coverage, plaintiff appealed to the Supreme Court of Tennessee. On July 10, 1989, the state supreme court held that plaintiff was indeed a federal employee, rather than a state employee, when he injured his back, and thus he was not eligible for state workers' compensation benefits. *Yount v. State of Tennessee*, 774 S.W.2d 919 (Tenn. 1989).

On July 15, 1987, plaintiff challenged the OEB decision before the AFBCMR. Plaintiff alleged three errors in the OEB decision, and requested that the correction board negate the actions of the OEB and the Secretary of the Air Force, reinstate him to the Air Force Reserve and the TANG, and award medical disability benefits, or alternatively, recommend that plaintiff be awarded such benefits. On October 13, 1988, the correction board reviewed an advisory opinion of the Chief of the General Law Division, Office of the JAG, and plaintiff's response thereto. After reviewing the evidence, the correction board found that there was insufficient evidence to show that plaintiff had been the victim of probable error or injustice in the OEB proceedings. Moreover, the correction board noted the existence of evidence indicating that plaintiff was no longer suffering from his 1983 back injury.

On July 7, 1989, after his appeal to the correction board, plaintiff refiled his civil action for improper discharge in the same federal district court in Nashville, Tennes-

---

cated, by pulling down his pants at a restaurant in St. Croix, the Virgin Islands, and that such actions by Captain Yount did constitute acts of misconduct.

(7) That Captain John M. Yount was involved in a disturbance, while intoxicated, by being at a hotel door while naked from the waist down at St. Croix, the Virgin Islands, and that such conduct on the part of Captain Yount did constitute misconduct.

**3.** Federal recognition means that an officer in the national guard must meet the same standards as officers on federal active duty. *See* 32 U.S.C. §§ 305, 307(a)–(c); Note, *The Militia Clauses, the National Guard, and Federalism: A Constitutional Tug of War*, 57 GEO.WASH. L.REV. 328, 343 (1988). Federal recognition is required for service in the TANG. Tenn.Code Ann. § 58–1–210(a).

Congress established a dual enlistment system, "under which National Guard members serve as members of both a state national guard and of the National Guard of the United States." *Perpich v. United States Dep't of Defense*, 666 F.Supp. 1319, 1323 (D.Minn.1987), *aff'd*, 880 F.2d 11 (8th Cir.1989), *aff'd*, —— U.S. ——, 110 S.Ct. 2418, 110 L.Ed.2d 312 (1990). Under the dual enlistment rationale, the states' authority over training the militia, found in the Militia Clause of the Constitution (Art. I, § 8 cl. 16), does not apply to the period during which national guard members are on active duty as part of the National Guard of the United States. *Dukakis v. United States Dep't of Defense*, 686 F.Supp. 30, 36 (D.Mass.), *aff'd*, 859 F.2d 1066 (1st Cir.1988), *cert. denied*, 490 U.S. 1020, 109 S.Ct. 1743, 104 L.Ed.2d 181 (1989).

see against the same state and federal defendants. During oral argument in the present case, plaintiff explained that it was necessary for him to file suit against both the Air Force and TANG because he was discharged from both entities. The action was transferred to this court on October 17, 1990.[4] On October 23, 1990, plaintiff filed the present action in this court. In his complaint, which is not a model of clarity, plaintiff asks the court to set aside his discharge for misconduct, to correct his military records, and to reinstate him with back pay and allowances. Plaintiff also requests the court to order the Secretary of the Air Force to consider plaintiff's application for a medical discharge. Plaintiff's request to be considered for a medical discharge is, however, inconsistent with his request to be reinstated to active duty, and it is also inconsistent with plaintiff's position that he is seeking neither disability retirement status nor disability retirement pay.

I. The Parties' Positions

Before the court, plaintiff challenges the correction board decision upholding the action of the OEB in discharging plaintiff for misconduct. In his complaint, plaintiff identifies the same three errors in the pro-

ceedings of the OEB that he presented before the correction board. First, plaintiff alleges error in the application to his case of amended Air National Guard Regulation (ANGR) 36–014 allowing dual processing of medical and misconduct discharge proceedings. Second, plaintiff alleges the OEB was improperly constituted because, according to plaintiff, Air Force regulations require the legal advisor of an OEB to be an ANG member. Third, plaintiff alleges he was denied due process because he was not given adequate time to prepare his case.[5]

Defendant moves to dismiss plaintiff's complaint for lack of jurisdiction on the grounds that plaintiff cannot successfully challenge his discharge because he fails to allege he was a federal employee at the time of his discharge, and thus he fails to invoke the court's jurisdiction. In addition, defendant asserts the court has no jurisdiction to consider plaintiff's disability retirement claim. In the alternative, defendant requests that the court uphold the correction board decision to discharge plaintiff for misconduct because the decision is not arbitrary or capricious, in bad faith, unsupported by substantial evidence, or contrary to applicable law or regulation, and enter summary judgment in defendant's favor.

**4.** *En passante,* it should be noted that a portion of plaintiff's district court case, pertaining to injunctive relief against the state defendants, was stayed pending the outcome of that portion of the case that was transferred, and is now pending, before this court. Section 1500 prohibits an action in this court when an action on the same facts is pending in another federal court. 28 U.S.C. § 1500. However, the materials before the court are insufficient to draw a conclusion in this regard. Moreover, the law is unsettled in this area. *Compare Tecon Engineers, Inc. v. United States,* 170 Ct.Cl. 389, 399, 343 F.2d 943, 946–47 (1965) (section 1500 deprives Court of Claims of jurisdiction only when suit is filed in other court first), *cert. denied,* 382 U.S. 976, 86 S.Ct. 545, 15 L.Ed.2d 468 (1966), *and Clark v. United States,* 19 Cl.Ct. 220, 222 (1990) (same) *with UNR Industries, Inc. v. United States,* 926 F.2d 1109 (Fed.Cir.1991). In *UNR Industries,* the Federal Circuit directed the parties to brief certain issues pertaining to section 1500, including "whether *Tecon* ... should be overruled." The court also requested the parties to brief the question of "whether the term 'has pending' ... in § 1500 can be properly con-

strued to mean pending at the time the Claims Court first entertains and acts on a Government motion to dismiss (or its equivalent) regardless of when the Claims Court suit was actually filed; or whether the term 'has pending' is properly construed to mean at the time when the Claims Court suit was filed." In addition, the court asked the parties to brief the question of "whether the rule announced in *Johns–Manville Corp. v. United States,* 855 F.2d 1556 (Fed.Cir. 1988), *cert. denied,* 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989), for determining what is a claim under § 1500 should be reconsidered, and if so, what should be the proper rule." *UNR Industries, supra,* 926 F.2d at 1110.

**5.** In his complaint, plaintiff also alleges that, as a result of a suit plaintiff brought against the Air Force in 1981, in which plaintiff prevailed on a claim for violation of due process, TANG has conspired with the Air Force to discriminate against plaintiff, to bring misconduct charges against him, and to amend ANGR 36–014 to provide for dual processing of plaintiff's case. There is no support for this conspiracy theory in the record.

## II. Jurisdiction

■ The first issue for consideration is whether plaintiff was a federal employee at the time of his discharge. Only federal employees may invoke the court's jurisdiction to hear wrongful discharge claims. The court's jurisdiction to entertain military pay claims such as plaintiff's is derived from the Tucker Act, 28 U.S.C. § 1491. As the court explained in *Paskert v. United States*, 20 Cl.Ct. 65 (1990),

[i]n claims alleging illegal separation, this Court's jurisdiction is premised on the fact that an illegal separation is a legal nullity which is void and that an unlawfully separated employee continues to accrue entitlements to pay and emoluments of the position from which he was separated. *See United States v. Testan*, 424 U.S. 392, 402, 96 S.Ct. 948, 955, 47 L.Ed.2d 114 (1976) (citing *United States v. Wickersham*, 201 U.S. 390, 26 S.Ct. 469, 50 L.Ed. 798 (1906)). Absent an unlawful personnel action, which deprives a claimant of money to which he would be otherwise entitled, there exists no jurisdiction under the Tucker Act to entertain a claim for back pay. Stated another way, the Court's jurisdiction is limited to claims for money presently due from the United States. *United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969).

*Paskert, supra*, 20 Cl.Ct. at 77. Although the Tucker Act provides federal employees with no substantive right to back pay, the Back Pay Act authorizes back pay claims against the United States by federal employees who have been victims of unjustified personnel action. 5 U.S.C. § 5596; *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *Mitchell v. United States*, 930 F.2d 893, 896 (Fed.Cir.1991); *Wright v. United States*, 19 Cl.Ct. 779, 783 (1990).

Defendant asserts that plaintiff, as a member of the Tennessee Air National Guard, was a state employee and not a federal employee at the time of his discharge, and thus plaintiff has not established that he is a former federal employee with a legitimate back pay claim against the United States. The Court of Claims and this court have held that a member of a state national guard unit, who is not in federal service, is not a federal employee for purposes of back pay and reinstatement claims under the Back Pay Act. *Christoffersen v. United States*, 230 Ct.Cl. 998, 1004 (1982); *Gnagy v. United States*, 225 Ct.Cl. 242, 243, 634 F.2d 574, 575 (1980); *Wright, supra*, 19 Cl.Ct. at 783.

In *Gnagy*, the court noted that "[t]here is no statute conferring federal employee status as an incident of membership in a National Guard unit not in active federal service." *Gnagy, supra*, 225 Ct.Cl. at 247, 634 F.2d at 577; *Christoffersen, supra*, 230 Ct.Cl. at 1003. These decisions were guided by the Supreme Court's reasoning in *Maryland v. United States*, 381 U.S. 41, 85 S.Ct. 1293, 14 L.Ed.2d 205 (1965), in which the Court found that the employment relationship arising from membership in a state national guard unit not in active federal service rests in part on the "militia clause" found in Article I, section 8, clause 16 of the Constitution, which reserves to the states the authority to organize and maintain the National Guard as the modern day militia. *Maryland v. United States, supra*, 381 U.S. at 46 & n. 8, 85 S.Ct. at 1297 & n. 8. The Supreme Court refused to find that national guard members were federal employees,

even though they are paid with federal funds and must conform to strict federal requirements to satisfy training and promotion standards. Their appointment by state authorities and the immediate control exercised over them by the States make it apparent that military members of the Guard are employees of the States, and so the courts of appeals have uniformly held.

*Maryland v. United States, supra*, 381 U.S. at 48, 85 S.Ct. at 1298. *See also Wright, supra*, 19 Cl.Ct. at 783.

These cases indicate that a member of the national guard not in federal active service is not a federal employee in his military capacity for purposes of the Back Pay Act. *See Christoffersen, supra*, 230 Ct.Cl. at 1004; *Gnagy, supra*, 225 Ct.Cl. at

243, 634 F.2d at 575. However, while these cases may well serve to preclude this court from exercising jurisdiction in circumstances where members of the national guard served as military officers and also as civilian technicians, it is unclear whether jurisdiction is lacking in suits such as the present one, where a national guard member is strictly military. In moving for summary judgment, defendant recognizes this uncertainty, and accordingly presented argument on the merits of plaintiff's claims as well. Because the law is uncertain in this area, the court will exercise jurisdiction and proceed to consider plaintiff's claims on the merits.[6]

### III. The Merits of the Discharge

#### A. Review of Administrative Decision Upholding Misconduct Discharge

■ Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. RUSCC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed.Cir.1987). A material factual dispute is one that might make a difference in the outcome of the case. *Anderson, supra,* 477 U.S. at 248, 106 S.Ct. at 2510. In opposing defendant's motion for summary judgment, plaintiff has identified no factual disputes that could affect the outcome of the case. Summary judgment is appropriate where, as here,

plaintiff fails to present sufficient evidence that there is a genuine issue for trial. *Anderson, supra,* 477 U.S. at 247–48, 106 S.Ct. at 2509–510. Therefore, plaintiff's wrongful discharge claim can be appropriately disposed of by summary judgment.

■ The "Claims Court has extensive experience reviewing decisions of corrections board in military pay cases." *Mitchell v. United States,* 930 F.2d 893, 896 (Fed.Cir.1991); *Voge v. United States,* 844 F.2d 776, 780 n. 1 (Fed.Cir.), *cert. denied,* 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988); *Sanders v. United States,* 219 Ct. Cl. 285, 302, 594 F.2d 804, 814 (1979). The decision of a military correction board is final and conclusive unless a claimant can establish that the board's decision was arbitrary, capricious, in bad faith, unsupported by substantial evidence, or contrary to applicable law or regulation. *Heisig v. United States,* 719 F.2d 1153, 1156 (Fed.Cir. 1983); *Sanders, supra,* 219 Ct.Cl. at 298, 594 F.2d at 811; *Paskert, supra,* 20 Cl.Ct. at 71. In the absence of strong evidence to the contrary, military administrators are presumed to act correctly, lawfully and in good faith in carrying out their official duties. *Sanders, supra,* 219 Ct.Cl. at 302, 594 F.2d at 813. The court's limited standard of review is reflected in the long-standing view that "[r]esponsibility for determining who is fit or unfit to serve in the armed services is not a judicial province.... [C]ourts cannot substitute their judgment for that of the military depart-

---

6. In a supplemental brief requested by the court after oral argument, defendant continues to insist that, because plaintiff was a national guard member, the holdings of *Christoffersen* and *Gnagy* deprive the court of jurisdiction to entertain Yount's claims. According to defendant, because these cases hold that the court has no jurisdiction to entertain claims by national guard members who are not federal employees, the same holds true for Yount. However, as stated above, in those two cases, the national guard members had both a civilian and a military status, and were found to be strictly state employees. Here, Yount's status is strictly military and defendant concedes that Yount was a federal employee at the time of his back injury which gave rise to his disability retirement claim. Under the circumstances, the court does not find *Christoffersen* and *Gnagy* absolutely

controlling with regard to the jurisdictional issue. Therefore, the court will exercise jurisdiction and consider Yount's claims on the merits.

For the above-stated reasons, similarly unavailing is defendant's argument that, because the court lacks jurisdiction to consider the merits of Yount's claims, the court lacks jurisdiction to review the decision of the military correction board to deny Yount relief. Even if the court were to view *Christoffersen* and *Gnagy* as depriving the court of jurisdiction to review Yount's claims, the fact that the correction board reviewed Yount's case and issued a decision vests this court with jurisdiction. The Claims Court's authority to review correction boards' decisions was recently reaffirmed by the Federal Circuit in *Mitchell v. United States,* 930 F.2d 893, 896 (Fed.Cir.1991).

ments when reasonable minds could reach differing conclusions on the same evidence." *Heisig, supra,* 719 F.2d at 1156.

With the foregoing standards of review in mind, the court will review the correction board's decision in this case accordingly. Before the correction board, plaintiff alleged the following three points of error in the OEB decision. First, plaintiff alleged that an active duty military judge sat as the legal advisor in his case, in violation of AFR 11–31. Second, plaintiff alleged he was not given adequate time to prepare his case. Third, plaintiff alleged that dual processing of his case was improper because, prior to his case, the regulations did not provide for dual processing, but during his case the regulations were amended to provide for dual processing.

■ Before rendering a decision in plaintiff's case, the correction board requested and received an advisory opinion from the JAG Office, to which plaintiff was allowed to respond. The correction board reviewed both the JAG opinion and plaintiff's response thereto before reaching a decision. In response to plaintiff's first allegation, that the OEB was improperly constituted, the correction board relied on the JAG opinion, which stated that AFR 11–31 authorizes the legal advisor on a board of officers to be an active duty judge advocate certified in accordance with Article 27(b) of the Uniform Code of Military Justice, or in the case of ANG boards, an ANG judge advocate. In the JAG's opinion, either an

active duty military judge *or* an ANG judge could serve as a legal advisor on the OEB that heard plaintiff's case. (Emphasis supplied). Therefore, the correction board found plaintiff's allegation of error in this regard to be without merit.[7] While the regulation might be considered to exhibit poor draftsmanship, the correction board's reading of the regulation is not unreasonable or irrational. Moreover, at the OEB hearing, plaintiff was specifically asked if he had any objections to the legal advisor, and he replied "No sir." Under the totality of the circumstances, even if one were to view AFR 11–31 as requiring an ANG judge in plaintiff's case, the failure to provide one is at best harmless error. *See Sanders, supra,* 219 Ct.Cl. at 310, 594 F.2d at 818.

■ With regard to plaintiff's allegation that he lacked adequate time to prepare his case, the correction board again referred to the JAG opinion, which stated that,

[w]hile his interviews may have been compressed into a three day period, counsel [for plaintiff] completely failed to address how the [plaintiff] was prejudiced by the timing of the board.... There is no new evidence establishing (nor has it even been alleged) that any witness who the [plaintiff] desired to testify was not available at the time of the efficiency board.

On this basis, the correction board found plaintiff's allegation in this regard to be without merit.[8] Moreover, in his submis-

---

7. Plaintiff's reliance on promotion passover cases such as *Doyle v. United States,* 220 Ct.Cl. 285, 599 F.2d 984 (1979), *cert. denied,* 446 U.S. 982, 100 S.Ct. 2961, 64 L.Ed.2d 837 (1980), and *Stewart v. United States,* 222 Ct.Cl. 42, 611 F.2d 1356 (1979), for the proposition that improperly constituted selection boards constitute legal error, is unavailing. Both *Doyle* and *Stewart* are distinguishable because they involved promotion selection boards that were improperly constituted for failure to include an appropriate number of Reserve members, in violation of 10 U.S.C. § 266. The composition of plaintiff's OEB is governed by AFR 11–31, which states that the legal advisor may be either an ANG member or a judge advocate certified pursuant to Article 27(b) of the Uniform Code of Military Justice. Since the legal advisor in plaintiff's OEB proceeding was the latter, there was no

legal error, as the correction board properly concluded.

8. With regard to plaintiff's allegations that the lack of adequate time in which to prepare his case violates his due process rights based on the fifth, sixth, and fourteenth amendments to the Constitution, it is well established that the court lacks jurisdiction to consider due process claims based on the fifth or fourteenth amendments. *See Walton v. United States,* 213 Ct.Cl. 755, 757 (1977) (citing *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002 (1967)); *Atlas Corp. v. United States,* 15 Cl.Ct. 681, 690 (1988), *aff'd,* 895 F.2d 745 (Fed.Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990). To the extent that plaintiff relies on the sixth amendment to support his due process claim, plaintiff misapprehends the nature of the

sions to the court, plaintiff does not indicate how he has been harmed by the alleged time constraints in preparing his case.

■ With regard to plaintiff's allegation that dual processing was improper, the correction board found that the amendment to the regulation did not change existing Air Force policy, since no regulation prohibited dual processing before the amendment. Rather, the amendment clarified existing Air Force policy to specifically permit dual processing. As explained by the JAG advisory opinion, the amendment

> did not represent a change in Air Force policy as argued by the [plaintiff]. Rather, it clarified the existing statutory authority of the Secretary to act in these cases. Had the regulation prohibited "dual" processing prior to [the amendment], we would agree with the [plaintiff]. However, all [the amendment] did was to set out in the regulation what the Secretary's authority had always been based on the provisions of 10 U.S.C. [§§] 1204 and 1205. Under these provisions,

the Secretary is given the discretion to retire (1204) or temporarily retire (1205) a member suffering a disability from injury. Nothing prevents him from "dual" processing cases in which there is both evidence of misconduct and a recommendation for disability. Having the statutory authority and there being no regulatory restraint on his exercise of it, the Secretary acted properly in approving the [plaintiff's] discharge for cause.

Therefore, the correction board found plaintiff's third allegation of error to be without merit. For the foregoing reasons, the Board found that there was insufficient evidence that plaintiff had been the victim of any probable error or injustice in the OEB proceedings.[9]

Having carefully reviewed the administrative record before the court, the court cannot say that the decision of the correction board to uphold plaintiff's discharge for misconduct was arbitrary or capricious, or that it was made in bad faith, or unsupported by substantial evidence, or contrary to law. Accordingly, the court affirms the

---

sixth amendment, which pertains only to criminal prosecutions.

**9.** Plaintiff raises to the court, for the first time on appeal, the Constitutional argument that application of amended ANGR 36–014 to his case constitutes an *ex post facto* law in violation of Article 1, section 9, clause 3 of the Constitution. However, the court's jurisdiction does not extend to claims based on provisions of the Constitution that do not mandate the payment of money by the federal government. "Under Section 1491 [the Tucker Act] what one must always ask is whether the constitutional clause ... which the claimant cites can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained. If not, this court cannot give relief under Section 1491." *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1008 (1967); *Froudi v. United States,* 22 Cl.Ct. 290, 296 (1991); *Atlas Corp. v. United States,* 15 Cl.Ct. 681, 691 (1988), *aff'd,* 895 F.2d 745 (Fed.Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990). In *Atlas,* the Claims Court found that it had no jurisdiction over a claim based on Article 1, section 9, clause 3 of the Constitution because "there is no language in the *ex post facto* clause itself which requires the payment of money damages for its violation." *Atlas, supra,* 15 Cl.Ct. at 691. Moreover, the court noted that "'from "earliest times," the Supreme Court has construed the *ex post facto* provision to apply

only to criminal laws.'" *Atlas, supra,* 15 Cl.Ct. at 691 n. 8 (quoting *Korte v. Office of Personnel Management,* 797 F.2d 967, 972 (Fed.Cir.1986)).

Even if the court had jurisdiction to consider plaintiff's *ex post facto* claim, such a claim would likely fail under the circumstances. *See Alberico v. United States,* 783 F.2d 1024 (Fed.Cir. 1986). In *Alberico,* the Federal Circuit found that an amendment to an Army regulation to allow the release of criminally convicted Reserve officers without notice and a hearing was merely procedural in nature and did not constitute an *ex post facto* law. *Alberico, supra,* 783 F.2d at 1028. The court found that the amendment merely corrected an inconsistency in the prior regulation, and though the amendment was inspired by, made during, and applied to plaintiff's case, it was not specifically directed at plaintiff. The Federal Circuit reasoned that, both before and after the amendment, plaintiff was subject to release from active duty for misconduct. Accordingly, the court rejected plaintiff's *ex post facto* claim. *Alberico, supra,* 783 F.2d at 1028. Likewise, in the present case, plaintiff Yount was subject to release from the TANG for misconduct, both before and after the amendment. The dual processing amendment was merely a clarification of existing regulations, and was procedural in nature, not substantive. Thus, the dual processing amendment does not violate the *ex post facto* clause of the Constitution.

correction board's decision that there was nothing improper or illegal about plaintiff's discharge for misconduct from the TANG.

## IV. The Disability Retirement Claim

■ Plaintiff also seeks to be considered for disability retirement for injuries he received while flying for the TANG on a training exercise in Panama during 1983. Plaintiff claims he was on federal active duty during this training exercise, and defendant presents no evidence to the contrary. Moreover, in a decision denying plaintiff state workers' compensation benefits, the Supreme Court of Tennessee found that plaintiff was on federal active duty when he received his injuries. *Yount v. State of Tennessee*, 774 S.W.2d 919 (Tenn. 1989).

Clearly, at the time of his injury, plaintiff was a member of TANG serving as a flight navigator on federal active duty. On November 20, 1983, plaintiff injured his back during a turbulent flight in connection with a training exercise in Panama. Plaintiff was removed from flying status until December 28, 1983, when he was returned to flying status after his physician found him to be "free of symptoms." On July 15, 1984, plaintiff's commander in the TANG recommended that discharge proceedings be initiated against plaintiff for his pattern of misconduct between 1982 and 1984. Thereafter, on September 12, 1984, plaintiff returned to his physician complaining of back pain, and he was again removed from flying status.

A Medical Evaluation Board convened on April 12, 1985, found plaintiff to be suffering from "[l]ow back pain, probable secondary to severe torsional stress with probable subsequent annular tear and facet disruption at the L ⅘ interval." The MEB recommended that plaintiff be returned to regular duty. However, plaintiff's commander directed a Physical Evaluation Board (PEB) to evaluate plaintiff. The PEB, which convened on April 29, 1985, rendered the same diagnosis as the MEB, but the PEB recommended that plaintiff be placed on temporary retirement with forty percent disability. Neither of the Boards found plaintiff's

back injury to be related to intentional misconduct on plaintiff's part.

Subsequently, when it became apparent to the Secretary of the Air Force that Air Force regulations did not specifically address plaintiff's situation, that is, dual processing for both disability and misconduct, the regulation was amended on August 20, 1985 to clarify existing regulations to allow for dual processing of National Guard members. The amendment also authorized the withholding of a medical discharge pending consideration of a discharge for misconduct. Thus, the Secretary never considered whether plaintiff was entitled to disability retirement status and pay, as he was subsequently discharged for misconduct.

By statute, the Secretary of each military service is authorized to make a final determination on a service member's entitlement to disability benefits. 10 U.S.C. §§ 1201–1221. Under sections 1201 and 1207, the secretary can authorize disability pay for a service member if the disability is not the result of the member's "intentional misconduct or willful neglect." 10 U.S.C. §§ 1201, 1207. There is no indication in the record that plaintiff's injury for which he seeks disability retirement consideration was the result of plaintiff's intentional misconduct or willful neglect. Moreover, defendant does not dispute that plaintiff was on federal active duty at the time he received his injuries. *See Yount v. State of Tennessee*, 774 S.W.2d 919, 921 (Tenn. 1989).

■ Defendant argues that the decision whether to place a service member in disability retirement status is discretionary with the Secretary of the military department involved, and because plaintiff was never appointed to such status by the Secretary of the Air Force, he cannot sue for pay accruing from that status. In advancing this argument, defendant asks the court to overlook or deviate from binding precedent. For many years, this court and its predecessor the Court of Claims have exercised jurisdiction over disability retirement claims. *See Sawyer v. United States*, 930 F.2d 1577, 1580 (Fed.Cir.1991)

(Claims Court has jurisdiction to review Secretary's determination, under section 1201, with regard to disability retirement pay); *Mitchell, supra,* 930 F.2d at 896; *Real v. United States,* 906 F.2d 1557, 1560 (Fed.Cir.1990); *Heisig, supra,* 719 F.2d at 1155–56; *Brown v. United States,* 184 Ct. Cl. 501, 396 F.2d 989 (1968); *Beckham v. United States,* 179 Ct.Cl. 539, 375 F.2d 782 (1967). Defendant acknowledges as much, but urges the court to ignore such precedent in this case. This court is not free to do. Precedents of the Court of Appeals for the Federal Circuit and its predecessor, the Court of Claims, are binding on this court unless changed in banc. *South Corp. v. United States,* 690 F.2d 1368, 1370 (Fed.Cir.1982); *see also Cornetta v. United States,* 851 F.2d 1372, 1377 (Fed.Cir.1988).[10]

In addition, defendant argues that before plaintiff is eligible for disability retirement pay, "he must obtain a decision that voids the Air Force's decision to discharge him for misconduct." Defendant's moving brief at 20. Defendant cites no statute, regulation or other authority in support of its assertion, but merely reiterates that the court lacks jurisdiction to entertain disability retirement claims, as section 1201 is not a money-mandating statute. This argument has been squarely rejected by *Sawyer, supra,* 930 F.2d at 1580. Moreover, section 1201 gives the Secretary of the Air Force authority to consider plaintiff for disability benefits if his injury did not result from his intentional misconduct. *See also* 10 U.S.C. § 1207 (requiring Secretary to deny disability benefits if injury resulted from intentional misconduct). In *Sawyer,* the Federal Circuit noted that the "Secretary has no discretion whether or not to pay active duty members ... [a]nd once he finds a disability qualifying, he likewise has no discretion whether to pay out retire-

ment funds...." *Sawyer, supra,* 930 F.2d at 1580.

As defendant points out, "the factual circumstances surrounding Mr. Yount's discharge are completely unrelated to the factual circumstances surrounding his claim for disability pay." Defendant's Supp. Brief at 6. Plaintiff was discharged for conduct unrelated to the injury for which he seeks consideration for disability benefits. Therefore, although plaintiff was properly discharged for misconduct, the court is aware of no statutory bar to preclude the Secretary of the Air Force from considering plaintiff for disability benefits. Indeed, plaintiff's entitlement to disability benefits is a matter that must be presented to the Secretary for resolution. *See Austin v. United States,* 393 F.Supp. 291, 295 (D.Kan.1975). The law in effect at the time of plaintiff's injury and discharge provided that a member of the national guard is entitled to the same benefits as a member of the Regular Air Force when he is called to active duty "(2) for any period of time, and is disabled in line of duty from injury while so employed." 32 U.S.C. § 318 (repealed)[11]; *see also Austin, supra,* 393 F.Supp. at 294; *Rae v. United States,* 159 Ct.Cl. 160, 162 (1962).

It is within the Secretary's discretion whether to accept or reject the recommendation of the PEB to retire plaintiff on forty percent temporary disability. Defendant argues that the Secretary took appropriate action on plaintiff's disability claim, by withdrawing his federal recognition, which, according to defendant, terminates plaintiff's eligibility for disability benefits. The court is not persuaded by defendant's argument, however. Defendant cites no statute, regulation or other authority for its position. Moreover, it is difficult to believe that a service member who suffers a disabling injury in the line of duty while

---

10. In its supplemental brief, defendant argues that *Sawyer* is distinguishable because, in *Sawyer,* the Claims Court had jurisdiction to consider Sawyer's claims for back pay and allowances. Defendant reiterates its position that, according to *Christoffersen* and *Gnagy,* Yount is not a federal employee and thus the court lacks jurisdiction to consider his claims. As stated above, the court finds these two cases distinguishable, and

under the circumstances the court declines to find that it lacks jurisdiction over Yount's claims.

11. Section 318 was repealed with respect to injuries received after November 14, 1986. Plaintiff was injured on November 20, 1983, and he was discharged on September 15, 1986.

in federal active service, and subsequently engages in acts of misconduct unrelated to his injury, is forever barred from receiving compensation for his disability. As provided by Air Force regulations, once a case is referred to the disability system, "the Air Force has the legal and moral obligation to give all members a full and fair hearing." AFR 35–4, ¶ 1–1. The record is unclear as to whether the viability of plaintiff's disability claim was considered by either the Secretary or the correction board. Accordingly, the court remands this matter to the Secretary of the Air Force for consideration of plaintiff's eligibility for disability benefits. It must be emphasized that in so doing, the court is not mandating that the Secretary exercise his discretion to place plaintiff in disability retirement status, as defendant argues. Rather, the court is remanding the matter to the Secretary so that he may exercise his statutory discretion to determine whether plaintiff is eligible for disability benefits.[12]

## CONCLUSION

For the foregoing reasons, the court grants defendant's motion for summary judgment relative to plaintiff's claims for wrongful discharge, and reinstatement with back pay and allowances. With regard to plaintiff's disability retirement claim, defendant's motion for summary judgment is denied, and plaintiff's disability retirement claim is remanded to the Secretary of the Air Force for consideration of plaintiff's eligibility for disability retirement benefits. Plaintiff is directed to file

status reports with the court at sixty-day intervals, computed from the date of this opinion, relative to the progress of his disability claim before the Secretary.

---

**12.** The Secretary has a responsibility to exercise his discretion. He cannot ignore it. Defendant relies on the Secretary's cryptic order of August 1, 1986, to establish that the Secretary affirmatively exercised his discretion with regard to plaintiff's disability proceeding. The court does not agree. The Secretary's order consists of three sentences. In the first two sentences, the Secretary ordered the withdrawal of plaintiff's federal recognition, terminated his reserve officer appointment, and directed his discharge under other than honorable conditions. The third sentence reads: "This terminates action under the provisions of AFR 35–4." Nothing in this sentence indicates that the Secretary exercised his discretion to consider the merits of plaintiff's disability action, or that he lacked authority to do so. AFR 35–4 is the Air Force regula-

tion for "Physical Evaluation for Retention, Retirement and Separation." Although section 3–45 of AFR 35–4 specifies that "defects or conditions that resulted from the member's intentional misconduct or willful neglect ... are noncompensable," there is no other provision which could be interpreted to mandate that disability retirement compensation for an injury not resulting from misconduct can be denied based on an unrelated non-medical and non court martial misconduct discharge. Quite frankly, the court is unsure of the basis, statutory and/or regulatory, and the rationale for the Secretary's unexplained "termination" of the disability process, especially when he has before him the recommendation of the PEB that plaintiff be placed on forty percent temporary disability.