# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs June 22, 2011

## STATE OF TENNESSEE V. TIANJE R. JOHNSON

**Direct Appeal from the Circuit Court for Marshall County**
**No. 09-CR-112      Robert Crigler, Jr., Judge**

_____

**No. M2010-01159-CCA-R3-CD - Filed November 15, 2011**

_____

The Defendant, Tianje R. Johnson, pled guilty to four counts of sale of a controlled substance, four counts of delivery of a controlled substance, and two counts of possession with the intent to deliver or sell a controlled substance. The appropriate counts were merged and the trial court sentenced her on the five remaining counts to an effective sentence of fourteen years in the Tennessee Department of Correction. On appeal, the Defendant argues that the trial court improperly denied her an alternative sentence and erred when it denied her motion to reduce her sentence. After a thorough review of the record and the applicable law, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and CAMILLE R. MCMULLEN, J., joined.

Eugenia Grayer, Nashville, Tennessee, for the Appellant, Tianje R. Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; Chuck Crawford, District Attorney General; Weakley E. Barnard, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### I. Facts
### A. Guilty Plea Hearing

This case arises from the Defendant's sale of drugs to a confidential informant

who was working with police.  Based on these events, a Marshall County grand jury indicted the Defendant for four counts of sale of a controlled substance, four counts of delivery of a controlled substance, and two counts of possession with the intent to deliver or sell a controlled substance.  The Defendant pled guilty to all of the charges and agreed to allow the trial court to determine her sentence.  During the guilty plea hearing, the State offered the following factual basis to support the Defendant's guilty pleas:

On January 14, 2009, the Drug Task Force sent a confidential informant in to have contact with [the Defendant].  The confidential informant went to [the Defendant]'s location.

There was an agreed-to amount of money to be given for cocaine base.  The purchase was made.

Everything in all of these cases was properly bagged, tagged and labeled, and sent to the TBI Crime Laboratory.

The crime laboratory would testify that the substance purchased in counts 1 and 2, which is sale and delivery for January 14th, 2009, was a Schedule II controlled substance, described as cocaine base, weighing .3 grams, which would be a C felony amount.

In counts 3 and 4, the situation occurred, [at] the same location, involving the same confidential informant.  The same type of situation: A buy and delivery of January 16, 2009.

And in most of these sale cases, the surveillance operation or part of the Drug Task Force would say that they personally observed [the Defendant], either through just eyesight, seeing her, or through the use of binoculars, seeing her at various points of these situations.

But on January 16th, the confidential informant gave her buy money and purchased a substance that was later determined by the laboratory to be cocaine base, a Schedule II controlled substance, and weighing .1 gram. That, again, is a C felony amount.

On January 21st, 2009, using the same confidential informant at the same location, the confidential informant, in exchange for monies, again, made a purchase of a substance that was later determined by the lab to be cocaine base, a Schedule II controlled substance.  And they determined it weighed .2 grams or two-tenths of a gram.  Again, that would be a C felony amount.

2

In counts 7 and 8, the same confidential informant was used. The money exchanged hands for the purchase of a substance. That substance was identified by the crime laboratory as being cocaine base, a Schedule II controlled substance, weighing .1 or one-tenth of a gram. Again, that would be a C felony amount.

Counts 9 and 10, which are the possession with intent to sell and possession with intent to deliver . . . . There was a traffic stop made on February 6 of 2009, by the Drug Task Force, along with the Lewisburg City Police Department.

Ms. Johnson was in that vehicle. There were drugs found in the vehicle.

[The Defendant] admitted to the officers, after being properly Mirandized, that the drugs were hers. They were again taken.

TBI Crime Laboratory examined that controlled substance; determined it was cocaine base, a Schedule II controlled substance, weighing .5 grams. That would be a B felony amount.

During that part of the investigation, [the Defendant] was spoken to.

[The Defendant] admitted to what she had been doing; gave what I would say was a full confession.

She also later, at a later date, gave a written confession describing the same set of facts that she described to the officers on the date of the stop.

Based upon this evidence, the trial court accepted the Defendant's pleas of guilty to all of the charges, with the agreement that the trial court would determine the length and manner of service of the Defendant's sentence after a sentencing hearing.

### B. Sentencing Hearing

At the Defendant's sentencing hearing, the parties agreed that the Defendant was a Range II multiple offender. The State offered into evidence the Defendant's presentence report, the facts read into the record at the guilty plea hearing, and the State's notice of enhancement. The Defendant offered into evidence a sentencing memo.

Additionally, Terese Frazier, a Probation and Parole Department officer, testified

that she prepared the presentence report for this case. Ms. Frazier identified certified copies of the Defendant's prior convictions, which included the following: a Class D felony conviction for shoplifting, a Class D felony conviction for theft, and two Class E felony convictions for theft. The Defendant's probation sentences in all of these cases had been revoked. Ms. Frazier confirmed that, in addition to the Defendant's four prior felony convictions, the Defendant had ten prior misdemeanor convictions for which she received either fully or partially suspended sentences.

Ms. Frazier testified that the Defendant had not completed her GED. The Defendant had participated in "[a]t least seven" different drug and alcohol treatment programs. About the Defendant's participation in multiple treatment programs, Ms Frazier said, "[W]hen I interviewed [the Defendant], she really couldn't remember all of the places that she had been into." Ms. Frazier said that the Defendant was currently in a drug and alcohol program, "the Magdalene." Ms. Frazier reported that the Defendant has part-time employment with Magdalene and also works full-time at Beacon Technologies.

Ms. Frazier testified that the Defendant reported that she began cocaine use at the age of 19 and used "as much as she could get." The Defendant explained to Ms. Frazier that she shoplifted items to support her drug habit.

On cross-examination, Ms. Frazier testified that she believed the Defendant was truthful during the interview for the presentence report. The Defendant reported to Ms. Frazier that the Defendant had been involved in abusive relationships. At the time of the presentence report, the Defendant told Ms. Frazier that she took prescription medication for a mental disorder. The Defendant attributed her success in the Magdalene program to her consistent use of the prescription medication.

Rebecca Stephens, an Episcopal priest, testified that she was the founding director of Magdalene, a two-year residential program for women with a criminal history of prostitution, drug addiction, and abuse. Stephens explained that Magdalene has a 72% success rate in treating women, which is double the national average for other programs working with people in recovery. Stephens testified that the Defendant had been in the program for almost a year. Stephens said she was aware of the Defendant's criminal and mental health history and believed the Defendant was "a good candidate for this program."

Donna Grayer, Director of the Magdalene program, testified that the Defendant was dually diagnosed. She explained that a person is dually diagnosed when they have both a mental illness and an alcohol or drug addiction. The Defendant, she said, had been diagnosed with bipolar disorder and a drug addiction. Grayer said that persons with bipolar disorder have "difficult[y] in judgment," "obsessive behaviors," "delusional behavior," and "memory loss." Grayer said that the Defendant had been in the

4

Magdalene program for "about 14 months," and she had been compliant. Grayer said that the program worked closely with the court system and would notify the trial court if the Defendant tested positive on a drug screen.

The Defendant testified that she had confirmed with her employer that she would continue her employment should the trial court place her on community corrections. The Defendant testified that she began using drugs at age 12. Her mother was an active addict and her father had been clean for the last two years. Both of her parents have bipolar disorder as well. The Defendant said that her stepfather first molested her at age thirteen. The Defendant engaged in prostitution for the first time at age fifteen. The Defendant explained this conduct saying that her mother used drugs and gambled, so "we didn't have anything to eat." The Defendant's high school boyfriend beat her so badly that she miscarried a pregnancy. She remained in this relationship with continued abuse for three years. The Defendant testified that she has been raped three times. The Defendant recalled that she suffered abuse from the person with whom she lived at the time of her arrest on the current charges. She sustained three broken bones to her face, a broken leg, black eyes, and lost a tooth from this abuse.

The Defendant testified that she sold the drugs in this case for a third party who gave her crack cocaine in return. The Defendant said that she knew her role in the drug sales was wrong and she was "very sorry" for it. The Defendant explained that she completed an eight-week outpatient program at Meharry Medical Center before entering the Magdalene program. The Defendant testified that she had not used illegal drugs since February 7, 2009, and, at the time of the hearing, she attended church, had regular employment, made every court appearance, and had received no new charges.

The Defendant testified that she had completed 28-day drug programs before but that they were not long enough. After each of her prior treatments, the program would release her to a halfway house. The halfway houses, however, required rent payments, which she struggled to meet with her minimum wage job. The Defendant explained that, with the Magdalene program, she did not pay rent, so she was able to save up money to provide for herself.

The Defendant testified that both her drug addiction and her mental illness were never treated in previous programs. The Defendant described her experience in the Magdalene program as follows:

> Magdalene has given me an opportunity now. It pays for my dental. I have my teeth fixed now. I feel good about myself. I am taking therapy, parenting, life skills, computer classes. I'm working on my GED. I have tutors that come.

And it is different from any program I have ever been in. It is a two-year program, which after my two years is up, I don't have to leave the community. I can still go into transitional. So I feel hopeful.

The Defendant acknowledged that she had previously violated her felony probation sentences but explained that she was "in a better place this time," and had a support system in place. If granted community corrections, the Defendant planned to complete the Magdalene program, gain her GED, and then seek a cosmetology license.

On cross-examination, the Defendant admitted that she sold drugs in Lewisburg between twenty and thirty times and engaged in prostitution "around 100" times.

At the conclusion of the hearing, the trial court sentenced the Defendant as a Range II multiple offender, merged the applicable convictions, and ordered the Defendant to serve an effective sentence of fourteen years in the Tennessee Department of Correction. In determining the length of the sentence, the trial court placed "enormous weight" on the Defendant's previous history of criminal convictions and criminal behavior. The trial court also placed "great weight" on the Defendant's four prior violations of felony probation sentences. The trial court also found several mitigating factors applicable. Specifically, the trial court found that the Defendant's conduct neither caused nor threatened bodily injury, that the Defendant attempted to assist authorities in uncovering other offenses, and that the Defendant was suffering from a mental or physical condition that significantly reduced the Defendant's culpability. The trial court then stated that the Defendant was not eligible for probation or community corrections based upon the length of the sentence. The trial court then went on to address community corrections in the event the trial court was "in error" as to the Defendant's ineligibility based on the length of her sentence. The trial court first noted that the Defendant was not presumed a favorable candidate for alternative sentencing based upon her conviction for a Class B felony. It then went on to deny community corrections based upon the Defendant's extensive history of criminal conduct, repeated failures at previous alternative sentences, and unsuccessful drug treatment. The trial court then denied the State's request for consecutive sentencing.

### C. Motion for Reduction or Modification of Sentence

The Defendant filed a motion requesting the trial court to reduce or modify her sentence. At the hearing on this motion, the Defendant argued that the trial court incorrectly found that she was ineligible for community corrections based upon the length of her sentence. She then reiterated the same arguments from the sentencing hearing. The trial court incorporated the proof from the original sentencing hearing at this hearing, and the Defendant declined to present any new proof. The trial court acknowledged that it was incorrect in stating that the Defendant was statutorily ineligible for community

6

corrections based upon the length of the sentence. The trial court then went on to restate its reasons for denying alternative sentencing based upon the Defendant's "long history of criminal conduct," and it stated that less restrictive measures than confinement were frequently and recently applied to the Defendant without success. The trial court denied the Defendant's motion stating, "So, even though she is statutorily eligible for community correction, I still don't think with this history that that would be an appropriate sentence." It is from these judgments that the Defendant now appeals.

## II. Analysis
### A. Denial of Community Corrections

The Defendant argues that the trial court should have given "adequate weight" to the Defendant's potential for rehabilitation or treatment and sentenced the Defendant to community corrections. The State counters that the record supports the trial court's denial of a community corrections sentence. We agree with the State.

A sentence under the Community Correction Act is an alternative sentence. *See State v. Taylor*, 744 S.W.2d 919, 920 (Tenn. Crim. App. 1987). Thus, this court must review an issue regarding the Community Correction Act *de novo* pursuant to Tenn. Code Ann. § 40–35–401(d) (2010). Additionally, if the record demonstrates that the trial court properly considered relevant sentencing principles, a presumption of correctness attaches to the trial court's determination. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

The Tennessee Community Correction Act was developed to "punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders." T.C.A. § 40-36-103(1) (2010). The program is available for:

(A) [p]ersons who, without this option, would be incarcerated in a correctional institution;

(B) [p]ersons who are convicted of property-related, or drug- or alcohol-related felony offenses or other felony offenses not involving crimes against the person ...;

(C) [p]ersons who are convicted of nonviolent felony offenses;

(D) [p]ersons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(E) [p]ersons who do not demonstrate a present or past pattern of behavior indicating violence; [and]

7

(F) [p]ersons who do not demonstrate a pattern of committing violent offenses . . . .

T.C.A. § 40–36–106(a)(1)(A)-(F) (2010). Those who are sentenced to incarceration or are on escape at the time of sentencing are not eligible for the program. T.C.A. § 40–36–106(a)(2) (2010). These eligibility criteria are "minimum state standards, guiding the determination of eligibility of offenders under this section." T.C.A. § 40-36-106(d) (2010). Even though a defendant might meet the minimum eligibility requirements of the Community Correction Act, an offender is not automatically entitled to such relief. *State v. Grandberry*, 803 S.W.2d 706, 707 (Tenn. Crim. App. 1990); *see also State v. Taylor*, 774 S.W.2d 919, 920 (Tenn. Crim. App. 1987).

Although at sentencing the trial court stated it believed the Defendant ineligible for community corrections based on the length of her sentence, it went on to apply sentencing considerations set forth in Tenn. Code Ann. § 40-35-103 and general sentencing guidelines. Upon consideration, the trial court denied alternative sentencing based upon the Defendant's extensive history of criminal conduct, past failures at less restrictive measures than incarceration, and lack of potential for rehabilitation. *See* T.C.A. § 40-35-102(1) (5) (2010). In support of its denial, the trial court noted the Defendant's four felony convictions, ten misdemeanor convictions, her admission of over twenty additional drug sales for which she was not charged, and approximately 100 acts of prostitution. Additionally, the Defendant's probated sentences on all four of her felony convictions were revoked at some point during her sentence. The trial court also noted that the Defendant is not a favorable candidate for alternative sentencing based upon her conviction for a Class B felony. *See* T.C.A. § 40-35-102(6) (2010). At the hearing on the Defendant's motion for a reduction or modification of a sentence, the trial court acknowledged the Defendant's eligibility for consideration of a community corrections sentence, but reiterated its reasoning from the sentencing hearing for denying the Defendant's motion.

We conclude that the Defendant's extensive history of criminal conduct, past failures at less restrictive measures than incarceration, and repeated attempts at rehabilitation followed by continued criminal behavior support the trial court's denial of a community corrections sentence. The Defendant is not entitled to relief as to this issue.

### B. Denial of Motion for a Reduction or Modification of Sentence

On appeal, the Defendant contends the trial court erred when it denied her motion to reduce or modify her sentence pursuant to Tennessee Rule of Criminal Procedure 35(b). Rule 35 of the Tennessee Rules of Criminal Procedure provides:

(a) Timing of Motion. The trial court may reduce a sentence upon motion

8

filed within 120 days after the date the sentence is imposed or probation is revoked. No extensions shall be allowed on the time limitation. No other actions toll the running of this time limitation.

(b) Limits of Sentence Modification. The court may reduce a sentence only to one the court could have originally imposed.

(c) Hearing Unnecessary. The trial court may deny a motion for reduction of sentence under this rule without a hearing.

Tenn. R. Crim. P. 35(a)-(c) (2010). "This rule does not vest the defendant with a remedy as of right." *State v. Elvin Williams*, No. M2006-00287-CCA-R3-CO, 2007 WL 551289, at *1 (Tenn. Crim. App., at Nashville, Feb. 27, 2007), *no Tenn. R. App. P. 11 application filed*. The Advisory Commission Comments to Rule 35 state, "The intent of this rule is to allow modification only in circumstances where an alteration of the sentence may be proper in the interests of justice. The modification permitted by this rule is any modification otherwise permitted by the law when the judge originally imposed [the] sentence." When the appellate court reviews the denial of relief on a motion to reduce or modify a sentence, the standard is whether the trial court abused its discretion. *State v. Irick*, 861 S.W.2d 375, 376 (Tenn. Crim. App. 1993).

We conclude the trial court did not abuse its discretion in denying the Rule 35 motion to modify. The Defendant asserts that modification is in the interest of justice based upon the same arguments and evidence submitted at the sentencing hearing. While, the Defendant's successful participation in the Magdalene program is admirable, it does not prove that the trial court abused its discretion in declining to modify the sentence. The Defendant is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and the applicable law, we affirm the trial court's sentence of fourteen years to be served in the Tennessee Department of Correction.

_____
ROBERT W. WEDEMEYER, JUDGE